638 A.2d 944

## CITY OF SCRANTON

v.

## WORKMEN'S COMPENSATION APPEAL BOARD (Stanley RIDESKI, Deceased).

**Appeal of Helen RIDESKI, Widow.**

Supreme Court of Pennsylvania.

Argued May 3, 1993.

Decided March 9, 1994.

Todd J. O'Malley, Scranton, for appellant.

Cal A. Leventhal and Jennifer D. Timmeney, Kingston, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

### OPINION OF THE COURT

PAPADAKOS, Justice.*

On February 8, 1979, Stanley Rideski (Decedent) was injured in the course of his employment as a firefighter with the City of Scranton, Appellee herein. While engaged in fighting a fire, Decedent fell against a fire hydrant but continued to work pulling hoses and other fire fighting equipment. As a result of his fall, Decedent suffered severe injuries to his left arm, left shoulder, neck and back including a massive tear to his rotator cuff on the left shoulder.

Decedent and Appellee employer executed a notice of compensation payable and filed same with the Bureau of Workmen's Compensation and subsequently entered into a supple-

* Reassigned to this author.

mental agreement which provided for the payment of total disability payments at the rate of $186.44 per week beginning February 23, 1980. For the period of February 9, 1979 to February 22, 1980, the parties agreed that Decedent was totally disabled and he received his full wages in lieu of any workmen's compensation benefits.

On February 1, 1984, Appellee filed a petition to modify this agreement on the basis that Decedent's total disability had resolved itself into a specific loss of the use of his left arm. On May 22, 1985, the referee found that the Decedent had suffered a specific loss of the use of his left arm as well as other work-related injuries to his lower back and neck which aggravated the pre-existing medical conditions and rendered him totally disabled. As a result of these injuries, the referee awarded total disability benefits and further provided that upon the termination of the total disability, specific loss benefits would be payable to Decedent at a rate of $186.44 per week for 410 weeks. No appeal was ever taken by Appellee from this decision.

Pursuant to the terms of the award, Decedent began receiving total disability benefits until his death on July 18, 1987, which was due to causes unrelated to his work injuries. Helen Rideski, Decedent's widow and Appellant herein, filed a petition for review before the Bureau of Workmen's Compensation claiming that she was entitled to receive the specific loss benefits now that her husband was dead and that Appellee was improperly withholding these payments from her. The parties stipulated to the facts as contained in Appellant's petition for review and submitted the matter to the referee. He issued his decision on October 12, 1988, and ordered Appellee to pay the 410 weeks of specific loss benefits, concluding that since Decedent's right to specific loss benefits vested when they were awarded in 1985, Appellant was entitled to receive these benefits upon the termination of Decedent's total disability which, in this case, occurred at death.

The board affirmed but the Commonwealth Court reversed, concluding that pursuant to Sections 306(c) and 306(d) of the Workmen's Compensation Act, 77 P.S. § 513, because Dece-

dent was not collecting his specific loss benefits at the time of his death they were not vested benefits and his widow is not entitled to receive them. The Commonwealth Court also disagreed with the Board and its referee that Decedent's death operated as a termination of his total disability, and that, therefore, his death could not trigger his right to receive the specific loss benefits at issue. *City of Scranton v. W.C.A.B. (Rideski)*, 142 Pa.Commonwealth Ct. 463, 598 A.2d 102 (1991).

We accepted further review to determine whether Appellant is entitled to receive the specific loss payments awarded her Decedent prior to his death in 1985, but not payable until his total disability ceased, and whether his death could operate as a termination of his total disability. We now reverse.

We first note that Appellant's claim for specific loss benefits is based upon Section 306(g) of the Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736 *as amended*, 77 P.S. § 541. This section provides in pertinent part:

> Should the employe die from some other cause than the injury, payments of compensation to which the deceased would have been entitled to under section 306(c)(1) to (25) [77 P.S. Section 513, schedule of compensation for the permanent loss of certain bodily members] shall be paid to the following persons who at the time of the death of the deceased were dependents ... in the following order and amounts:

> (1) To the surviving widow or widower if there are no children under the age of eighteen. (Footnote omitted.)

Here, it is not disputed that the Decedent died from an injury other than injuries which formed the basis of the finding of his total disability (congestive heart failure) and the relative inquiry becomes whether his specific loss benefits, awarded in 1985 but not payable until his total disability ceased, constituted "payments of compensation to which the Decedent would have been entitled to."

Appellee argues that this question is answered by the provisions of Section 306(d), 77 P.S. Section 513, which provide in pertinent part:

> Where, at the time of the injury the employe receives other injuries, separate from these which result in permanent injuries enumerated in clause (c) of this section [Section 306(c)(1) to (25) ], the number of weeks for which compensation is specified for the permanent injuries shall begin at the end of the period of *temporary* total disability which results from the other separate injuries. (Emphasis added).

Appellee suggests that this section, by requiring that payments for other injuries (like Decedent's specific loss payments) not begin until the end of a temporary total disability, makes entitlement to those payments contingent upon termination of the temporary total disability by a healing during the lifetime of an injured employee. According to Appellee's reading of this section, since Decedent did not experience a healing of his disability during his lifetime he was never entitled to the further payments of specific loss benefits. We disagree.

Contrary to Appellee's arguments, Section 306(d) merely sets the timetable for when payments of specific loss benefits are to begin. The section does not explain or define when an injured employee is entitled to payments or when a period of temporary total disability "ends" but only requires that any additional payments for other injuries begin at the end of the temporary total disability. Appellee argues, however, that we determined in *Turner v. Jones and Laughlin Steel Corp.*, 479 Pa. 618, 389 A.2d 42 (1978), that the "end" of a temporary total disability can only occur by an eventual healing or natural termination and that, without such an "end" (during the injured employee's lifetime) the entitlement to specific loss benefits cannot ripen. This is a misreading of *Turner.*

In *Turner,* the claimant was rendered a paraplegic as the result of an industrial accident and was awarded payment for total disability. He later petitioned to modify the compensation agreement from total disability to compensation for the

loss of use of both legs, a specific loss claim. His reason for seeking to change the award was that under his union contract, he was entitled to a permanent incapacity pension, except that upon reaching age 65, his pension would be reduced by any amount received pursuant to workmen's compensation, but not by any payment for loss of bodily members, i.e., specific loss benefits. Because claimant was 65 and was receiving workmen's compensation benefits in excess of his union pension, this reduction would have entirely eliminated his pension.

The Workmen's Compensation Appeal Board awarded claimant compensation for loss of use of both legs retroactive to the date of the accident with all sums already paid to be deducted from the modified award. The Commonwealth Court reversed and we, in turn, reversed that court and reinstated the Board's award, holding that since claimant was entitled to either a temporary total disability or specific loss benefits, he should be able to choose between them *even if the temporary total disability had not terminated.*

The thrust of *Turner's* discussion of Section 306(d) was to explain that although some disabilities may not end through healing, the method of ending permanent disability is irrelevant because it is the *termination* of permanent disability, not the way it ends that is critical. Whether the total disability ends through healing or through an election to receive specific loss benefits in lieu of total disability benefits, we concluded that a termination had, in any event, occurred and the claimant in *Turner* was entitled to receive the specific loss benefits.

Similarly, Decedent's death in this case (unrelated to his work injuries) operated as a termination of his total disability and is consistent with Section 306(a), 77 P.S. Section 511 which provides that total or partial disability ends at the death of the worker. *Turner's* common sense approach to Section 306(d) makes clear that the provision is intended only to establish the payment procedures when total disability ceases, leaving a claimant still factually qualified for benefits for permanent specific loss. It is to be observed that in *Turner* the claimant was allowed to terminate his total disability upon a finding by

the referee that his condition was such that he could qualify for *either* a specific loss or total disability. This is different from the factual setting before us.

Decedent was found to be totally disabled and was also found to be suffering from a specific loss of the use of his arm in 1985. Specifically, the referee found that, at the time of the initial injury in 1979, Decedent not only suffered the loss of the use of his left arm but also suffered a frozen shoulder, chronic cervical sprain with continued pain and secondary muscle spasms and chronic lumbar sprain with continued pain and secondary muscle spasms. From the time of the initial injury, the referee specifically found that Decedent suffered degenerative arthritic changes in his cervical area as well as the lumbar spinal area which aggravated the former injuries, were precipitated by and causally related to the initial work injury. These findings compelled the referee to make separate awards for separate and distinct injuries as they existed in 1985. Because these awards were for separate injuries, Decedent was never in a position to make an election of benefits, as was the case in *Turner.* Additionally, these factual findings made by the referee concerning Decedent's medical and physical state in 1985 were never appealed and once they became final established Decedent's entitlement to future payments and are binding on us.

Based on this record, we conclude that upon the termination of Decedent's total disability, Section 306(d) required that his compensation begin for his specific loss. Since these payments could not be made directly to him, Section 306(c) provides that these compensation benefits are payable directly to his surviving spouse, Appellant.

Accordingly, the opinion and order of the Commonwealth Court are reversed and the order of the Workmen's Compensation Appeal Board, dated October 3, 1990, is hereby reinstated.

LARSEN, J., did not participate in the decision of this case.

FLAHERTY, J., files a dissenting opinion in which ZAPPALA, J., joins.

MONTEMURO, J., who was an appointed Justice of the Court at the time of argument, participated in the decision of this case in his capacity as a Senior Justice.

FLAHERTY, Justice, dissenting.

I dissent. In my view, this case is governed by *Turner v. Jones and Laughlin Steel Corp.*, 479 Pa. 618, 389 A.2d 42 (1978), which holds that a claimant who is eligible for compensation either on the basis of total disability or specific losses may elect compensation under the provision more beneficial to him, provided that what he has already received must be treated as a setoff against what he is entitled to receive under the alternate benefit.

In other words, *Turner* simply held that section 306(d) "requires that payment for specific losses not begin until the payment for temporary total disability has ended." 479 Pa. at 625, 389 A.2d at 45, based on the assumption that if a permanently disabled person were to be permitted to elect specific loss benefits in lieu of permanent disability, the award of specific loss benefits would be retroactive to the date of the accident and that all sums already paid would be deducted from the modified award. *Turner* allows an injured worker to maximize his benefits under the act by electing between types of awards which would be most beneficial to him, subject to a set off for all benefits already paid.

Using the same approach here, facilitating Rideski's maximum recovery under the act, it would be proper under sections 306(d) and 306(g) to allow Rideski's widow to elect specific loss benefits on her deceased husband's behalf. However, she should be able to make that claim only as he would have made it, retroactively to the date benefits were first payable and subject to a setoff for all sums already paid. Rideski was entitled to 430 weeks of specific loss benefits (410 weeks for the loss of an arm plus 20 weeks healing = 430 weeks = 8 years, 3 months). Rideski died on July 18, 1987, 8 years, 5 months after the accident. Because Rideski received disability payments for this entire period of time in the same amount as his specific loss benefits which must be set off

against any specific loss benefits to which he was entitled, and since any specific loss benefits expired two months before Rideski died, his widow was entitled to no specific loss benefits, and Commonwealth Court was correct in its result, albeit in error in its interpretation of *Turner.*

Thus, I would affirm Commonwealth Court.

ZAPPALA, J., joins this dissenting opinion.