**Bryan COKER, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (DUQUESNE LIGHT COMPANY), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 16, 2004.

Decided Aug. 3, 2004.

Daniel K. Bricmont, Pittsburgh, for petitioner.

Richard B. Tucker, III, Pittsburgh, for respondent.

BEFORE: PELLEGRINI, Judge, and COHN, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge COHN.

Bryan Coker (Claimant) petitions for a review of a December 8, 2003 order of the Workers' Compensation Appeal Board (Board) affirming the January 14, 2003 order of a Workers' Compensation Judge (WCJ). The WCJ had granted in part Claimant's petition to review compensation benefits and denied Claimant's petition to modify compensation benefits. The primary issue before us is whether a claimant can receive concurrent payments of both total disability benefits and specific loss benefits, when the amount of total disability benefits he receives has been reduced by a disability pension offset. We are also asked to decide whether the WCJ correctly declined to approve the fee agreement between Claimant and his counsel.

The facts of this case are not in dispute. Petitioner was employed by Duquesne Light Company (Employer) as a linesman. On March 19, 1999, while working in the course and scope of his employment, Claimant came in contact with a high voltage electrical wire. Claimant sustained catastrophic injuries including extensive third degree burns on the left side of his body, his face, neck and head, which left him permanently scarred, in addition to a traumatic amputation of his left lower arm.

The incident also resulted in Claimant losing his left ear.

On April 1, 1999, Employer issued a notice of compensation payable recognizing Employer's liability for 410 weeks for loss of use of his left arm and also establishing that Claimant had an average weekly wage at the time of the accident of $1,827.24 per week, resulting in workers' compensation benefits of $588.00 per week.[1] Because Claimant received a pension funded by Employer, Employer offset the workers compensation benefits. From September 1, 2000 until May 31, 2001, Employer offset a credit of $162.85 per week, resulting in a weekly compensation rate of $425.15. Because Claimant changed his election of benefits, as of June 1, 2001, the offset became $142.72 per week, resulting in a weekly compensation rate of $445.28. (WCJ Decision, Finding of Fact 2). Employer and Claimant also stipulated that Claimant was entitled to receive facial disfigurement "pursuant to Section 306(a)." (WCJ Decision, Finding of Fact 3). The parties stipulated that the WCJ was to determine the number of weeks that the Claimant was entitled to receive for his facial disfigurement.

In December 2001, Claimant filed a single petition in which he sought review of "Medical Treatment and/or Billing" and also sought to receive specific loss benefits, in addition to temporary total disability benefits, up to a combined maximum of $588.00, and attorney fees on the basis of an unreasonable contest. (Claimant's Petition of 12/10/2001).[2] Employer filed an answer that denied these allegations but then filed an amended answer in which it acknowledged "that claimant had suffered a loss of use of his left upper extremity and is entitled to payment of specific loss benefits in the amount of 410 weeks according to section 306(c)(3) of the Workers' Compensation Act." (WCJ Decision, Finding of Fact 1). In this answer, Employer also acknowledged that Claimant had sustained a disfigurement injury compensable under Section 306(c)(22) of the Workers' Compensation Act; however, Employer requested that the WCJ determine the number of weeks of compensation for this injury. (WCJ decision, Finding of Fact 1, 1–2). Accordingly, the WCJ had to determine: (1) the number of weeks of compensation Claimant could receive for his disfigurement and (2) whether Claimant could receive concurrent payment of his specific loss benefits with his total disability payments (which had been reduced by the pension offset).

The WCJ conducted hearings on the Petition and issued a decision that awarded claimant 410 weeks of compensation at $588 per week for the loss of use of his left arm, and 275 weeks at $588 per week for Claimant's "serious and permanent disfigurement of the head, neck and face, of such a character as to produce an unsightly appearance, that is not usually incident to employment." (WCJ Decision, Conclusion of Law 2). However, the WCJ concluded that claimant was not "entitled to receive stacking of specific loss benefits ... and net total disability benefits, following a credit ... up to a maximum payment of $588 per week." (WCJ Decision, Conclusion of Law 3). The WCJ denied Claimant's "stacking request" based upon our decisions in *Crews v. Workers' Compensation Appeal Board (Ripkin)*, 767 A.2d 626 (Pa.Cmwlth.2001) and *Sharon*

---

1. The Notice indicated that the type of injury was "electrical burns" and that the body parts affected were "left arm, back, face, l. ear & neck." (Notice of Compensation Payable, 4/1/99).

2. He had also requested reimbursement for medical services which request was withdrawn.

*Steel Corporation v. Workers' Compensation Appeal Board (Frantz ),* 790 A.2d 1084 (Pa.Cmwlth.2002). Additionally, the WCJ awarded costs of litigation in the amount of $1,313.68 because Claimant was successful in part, but did not approve attorney's fees for Claimant's counsel. Finally, the WCJ noted that under the fee agreement, Claimant's counsel was to receive payment if he obtained compensation benefits over and above Claimant's current compensation rate. Since the compensation rate remained the same, the WCJ concluded that counsel was not entitled to compensation.

Claimant appealed the WCJ's decision to the Board, which affirmed. The Board explained:

> While a claimant may be entitled to both total disability benefits and specific loss benefits, he may not receive them simultaneously, where the separate injuries arise from the same incident. *City of Philadelphia v. WCAB (Barclay),* 144 Pa.Cmwlth.247, 601 A.2d 449 (1991); *Turner v. Jones & Laughlin Steel Corp.,* 479 Pa. 618, 389 A.2d 42 (1978). In situations which fall squarely within the provisions of Section 306(d), benefit payments for the total disability precede those awarded for specific loss. *St. Joseph Hosp. v. WCAB (Ladd),* 725 A.2d 1287 (Pa.Cmwlth.1999).

> Under the current status of the law, we are obligated to affirm the WCJ. Although Claimant is entitled to specific loss benefit for the loss of his left arm and his facial disfigurement, he is not entitled to receive them until his total disability benefits have ended. *Ladd.* While Claimant tries to analogize this case to *Sharon Steel Co. v. WCAB (Frantz),* 790 A.2d 1084 (Pa.Cmwlth. 2002) and *Westomoreland Reg'l Hosp. v. WCAB (Stopa),* 789 A.2d 413 (Pa.

Cmwlth.2001), his reliance on these cases is misplaced.

(Board Decision, pgs. 3–4). Accordingly, the Board concluded that the case law "does not authorize the simultaneous award of specific loss benefits when a claimant is already receiving temporary total disability benefits or allow a claimant who is receiving benefits below the statutory maximum to supplement those benefits with specific loss benefits." (Board Decision, pgs. 4–5). Claimant appeals the Board decision.

Our review in a workers' compensation case, where both parties presented evidence before the WCJ and the Board takes no additional evidence, is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether constitutional rights have been violated or whether an error of law has been committed. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe),* 571 Pa. 189, 812 A.2d 478 (2002). Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan),* 531 Pa. 287, 612 A.2d 434 (1992). It is well established that the WCJ is the ultimate fact finder, and this Court is bound by his credibility determinations. *Trimmer v. Workers' Compensation Appeal Board (Monaghan Township),* 728 A.2d 438 (Pa. Cmwlth.1999). Thus, the WCJ is free to accept or reject the testimony of any witness, in whole or in part; "[i]t is not the function of this Court to reweigh evidence and to substitute its judgment for that of the WCJ." *Supervalu, Inc. v. Workers' Compensation Appeal Board (Bowser),* 755 A.2d 715, 720 (Pa.Cmwlth.2000).

■ We first begin with Section 306(d), which governs a situation where, as here, a single work-related incident has caused multiple, separate and distinct injuries. It provides:

Where, at the time of the injury the employe receives other injuries, separate from these which result in permanent injuries enumerated in [Section 306(c)] of this section, the number of weeks for which compensation is specified for the permanent injuries shall begin at the end of the period of temporary total disability which results from the other separate injuries, but in that event the employe shall not receive compensation provided in [Section 306(c)] of this section for the specific healing period.

77 P.S. § 513(25). Under this Section, a claimant can prove that he sustained either a specific loss or disability from each separate injury; however, payment of specific loss benefits does not begin until after his receipt of total disability payments ends.

Claimant argues that here, his receipt of total disability payments has essentially "ended" because he is not receiving the full amount per week. Specifically, he asserts that because his total disability payment is reduced by the pension offset he claims he is not receiving a *total disability* payment of $588 weekly. He contends that, Section 306(d) allows a claimant to receive concurrently, both disability benefits and specific loss benefits, provided that the claimant's entitlement to "total disability" has ended. Claimant further argues that his entitlement to total disability ended at the time the pension offset became effective.

This is a novel argument that we have not yet addressed. In our previous cases, we held that, under the language in the Act, benefits for specific loss cannot begin until after total disability payments have ended. *See, e.g., Crews v. Workers' Compensation Appeal Board (Ripkin)*, 767 A.2d 626, 632 (Pa.Cmwlth.2001) (finding that claimant was entitled to specific loss benefits for injuries to eye and upper extremity, but could not receive these benefits until after total disability benefits terminated because injuries resulted from same incident); *St. Joseph Hospital v. Workers' Compensation Appeal Board (Ladd)*, 725 A.2d 1287 (Pa.Cmwlth.1999) (finding that although claimant was entitled to specific loss benefits for the loss of the use of her legs, she could not receive them until her total disability benefits terminated since injuries arose from same incident).

Claimant argues that his benefits "ended" when they were reduced by the offset and cites *City of Scranton v. Workmen's Compensation Appeal Board (Rideski)*, 536 Pa. 161, 638 A.2d 944 (1994), to support the concept that there is no "rigid delineation" regarding when "temporary total disability can be deemed to have 'ended'." (Claimant's Brief at 12). In that case, the employer argued that the disability had to heal in order to trigger the payment of specific loss benefits, and since the claimant's injuries had not healed at the time of his death, it was not required to pay specific loss benefits. The Supreme Court rejected this argument, noting that "Section 306(d) merely sets the timetable for when payments of specific loss benefits are to begin." *City of Scranton*, 536 Pa. at 165, 638 A.2d at 946. It does not define when a period of temporary total disability ends. The Court concluded that total disability did end upon the claimant's death, and that the specific loss award could be paid to the claimant's surviving spouse. *Id.* at 167, 638 A.2d at 947. The Court also noted its own holding in *Turner v. Jones Laughlin Steel Corporation*, 479 Pa. 618, 389 A.2d 42 (1978), in which it had concluded that a claimant could voluntarily

choose to cease receiving total disability benefits in order to begin receiving a specific loss award.[3] Neither situation fits the facts here. These cases provide that temporary total disability benefits end either upon death or by a claimant's voluntary request not to receive the benefits. In both of these situations, the claimant has stopped receiving all benefits: that has not occurred here. Neither case indicates that a pension offset deducted from total disability payment "ends" that total disability payment where there is ongoing receipt of the benefits. We, thus, conclude that *City of Scranton* does not resolve this issue.

Claimant also attempts to analogize his situation to one in which an employee is receiving *partial* disability benefits, a circumstance in which simultaneous disability and specific loss benefits can be paid. He relies on *Sharon Steel*, where a claimant receiving partial disability benefits returned to work. This Court, relying on *Turner*, noted that the **total** disability period had ended upon his return to work, such that, under Section 306(d), concurrent payments for partial disability and specific loss were permissible. *Sharon Steel*, 790 A.2d at 1089. However, in the matter *sub judice*, Claimant's **total** disability has not ceased. Claimant's argument is premised on the notion that he is *not* receiving his full payment of $588 per week *as a workers' compensation total disability payment*. However, his argument does not take into account that he *is* receiving, every week, a total of $588 in employer funded disability payments. He receives two checks instead of one: he receives a disability pension payment and a workers' compensation disability payment that, to-

gether, total the amount of disability payment to which he is entitled under the Act.

■ The Court is sympathetic to the Claimant's plight: he has tragically suffered the specific loss of his arm and ear, has been permanently scarred, and is totally disabled. He may never receive the weeks of specific loss benefits to which he is entitled, if he remains totally disabled. However, we are bound by the express and unambiguous language of the statute,[4] which specifically states that specific loss benefit payments do not begin until the period of total disability ends. Claimant's total disability has not ended and he is receiving in full the amount of employer funded payments to which he is entitled under the Act. Accordingly, we hold that the Board correctly determined that Claimant cannot collect, concurrently, specific loss benefits and total disability benefits, even though the disability benefits have been offset by payments he receives from an employer-funded disability pension.

■ Claimant also argues that the Board should have "approved the attorneys' fee agreement between claimant and his counsel." (Claimant's Brief at 4.) Counsel notes that, although he was unable to increase the amount above Claimant's current compensation rate, he was able to obtain additional compensation benefits. The WCJ, in declining to approve the counsel fee, noted that Counsel had indicated to Claimant in a letter that the agreement covers "20% of any award of benefits made to Mr. Coker over and above his current compensation rate."

3. The claimant in *Turner* requested the change because, under the provisions of his pension plan, the amounts he was to receive in pension would be offset from amounts he received under the Act. The pension contained an exception for amounts received for

loss of bodily members, such that he could receive his full pension, without offset, and full specific loss benefits.

4. *Beitman v. Department of Labor and Industry*, 675 A.2d 1300, 1302 (Pa.Cmwlth.1996).

(WCJ Decision, Finding of Fact 7). The WCJ concluded that no fees were appropriate because "claimant's counsel did not succeed in obtaining additional compensation benefits over and above claimant's current compensation rate." (WCJ Decision, Conclusion of Law 7). In reviewing this determination, the Board noted that "Section 442 of the Act, 77 P.S. § 998, provides that in cases where the efforts of a claimant's counsel produce a favorable result to the claimant but no immediate reward of compensation is made, the WCJ shall allow or reward reasonable counsel fees, as agreed upon by the claimant and his attorneys, without regard to any per centum." (Board Decision at 5). The Board further concluded, "Because Claimant and his attorney agreed that Claimant's counsel would only receive twenty percent of any rate increases awarded, and because no rate increases were awarded, we detect no error in the WCJ's decision not to approve the fee agreement." We agree with this rationale.

Accordingly, having concluded that Claimant was not entitled to simultaneous payment of total disability and specific loss benefits, and that counsel fees were appropriately denied, we affirm the order of the Board.

### ORDER

**NOW,** August 3, 2004, the order of Workers' Compensation Appeal Board in the above-captioned matter is hereby affirmed.