## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Cook,                          :
                    Petitioner        :
                                      :
            v.                        :
                                      :
Workers' Compensation Appeal          :
Board (Department of                  :
Transportation),                      :    No. 765 C.D. 2017
                    Respondent        :    Submitted: January 26, 2018


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE ELLEN CEISLER, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                              FILED: May 18, 2018


Robert Cook (Claimant) petitions this Court for review of the Workers'
Compensation (WC) Appeal Board's (Board) May 12, 2017 order affirming the
Workers' Compensation Judge's (WCJ) decision denying Claimant's Petition to
Suspend Indemnity Benefits (Suspension Petition). Claimant essentially presents one
issue for this Court's review: whether Claimant was entitled to collect specific loss
benefits as of April 30, 2014.[1] Upon review, we affirm.

---

[1] Claimant's Statement of Questions Involved lists three issues: (1) whether the Board erred
by misapprehending controlling case law requiring that the April 30, 2014 offset reduction of his
benefits effectively ended his total disability status, making his previously-awarded specific loss
benefits due and payable; (2) in the alternative, whether the Board erred by misapprehending
controlling case law establishing that Claimant's April 30, 2014 voluntary removal from the
workforce and resultant benefits suspension constituted the end of this total disability status, making
his previously-awarded specific loss benefits due and payable; and (3) whether the Board erred by
affirming the WCJ's decision denying Claimant penalties when the Commonwealth of
Pennsylvania, Department of Transportation refused to pay specific loss benefits as ordered.
Because these issues are subsumed in the analysis of whether Claimant was entitled to specific loss
benefits as of April 30, 2014, we have combined the issues herein.

## Background

The facts in this case are not in dispute. On September 26, 2005, Claimant sustained rib, lung, and left arm and hand injuries when he was struck by a vehicle in the course and scope of his employment for the Commonwealth of Pennsylvania Department of Transportation (Employer). On October 5, 2005, Employer issued a Notice of Compensation Payable (NCP) accepting liability for Claimant's injuries and awarding Claimant temporary total disability benefits in the amount of $716.00 per week. On July 6, 2007, Claimant's compensation ended pursuant to a June 4, 2007 Notice of WC Benefit Offset. On November 6, 2007, a WCJ accepted the parties' stipulation of facts (Stipulation), wherein they agreed Claimant would "begin receiving reduced [WC] benefits in the amount of $202.02 per week based on his continuing receipt of offsetable benefits, namely his retirement pension[,]" from November 6, 2007 "into the future in accordance with the terms and limitations of the [WC] Act [(Act)[2]]." Stip. at 2.

On September 27, 2007, Claimant filed a claim petition for specific loss benefits due to the loss of use of his left arm and hand. After numerous hearings, on September 12, 2008, the WCJ determined that Claimant permanently lost the use of his left hand and forearm for all practical intents and purposes, and that Claimant was still not recovered from his lung injury. Accordingly, the WCJ ordered Employer

> to pay [Claimant] [WC] at a rate of $716.00 per week and continue to pay such compensation for 370 weeks in payment of the [l]oss of [u]se of [Claimant's] left forearm and hand. **The aforesaid award shall be due and payable when [Claimant's] [t]emporary [t]otal [d]isability status changes or when he is no longer disabled from his other injuries (injuries other than to his left forearm and hand).**

---

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2708.

WCJ September 12, 2008 (9/12/08) Dec. at 5 (emphasis added).

On June 11, 2009, the parties entered into a third-party settlement agreement, wherein they "agreed that Employer was responsible for 34.35[%] of [Claimant's] future indemnity benefits and medical expenses until a subrogation interest of $3,539,233.81 was exhausted. As a result, Claimant's weekly benefits were reduced from $202.02 to $69.39 per week." WCJ March 1, 2016 (3/1/16) Dec. at 3. "On April 30, 2014, Employer issued a Notice of [WC] Benefit Offset wherein Employer asserted an offset in the amount of $230.75 per week, based on Claimant's receipt of Social Security Retirement Benefits. As a result, Claimant's weekly benefits were reduced from $69.39 to $0.00 per week." WCJ 3/1/16 Dec. at 3. Claimant did not challenge the sums or the offsets.

On July 1, 2015, Claimant filed a Petition for Penalties (Penalty Petition) alleging that since his weekly benefits had been reduced to $0.00 by the third-party settlement and Social Security and pension offsets, his temporary total disability status had changed, thus, he was entitled to receive his previously-awarded specific loss benefits. WCJ hearings were held on July 28 and October 27, 2015, during which Claimant's counsel amended the Penalty Petition to the Suspension Petition on the basis that Claimant had voluntarily removed himself from the workforce as of April 30, 2014 for reasons unrelated to his work injury. On March 1, 2016, the WCJ denied the Suspension Petition because Claimant failed to prove that he voluntarily retired from the workforce, that his total disability benefits should be suspended, or that his specific loss benefits were due and owing as of April 30, 2014. Claimant appealed to the Board. On May 12, 2017, the Board affirmed the WCJ's decision. Claimant appealed to this Court.[3]

---

[3] "On review[,] this Court must determine whether constitutional rights were violated, errors of law were committed, or necessary findings of fact were supported by substantial competent evidence." *Stepp v. Workers' Comp. Appeal Bd. (FairPoint Commc'ns, Inc.)*, 99 A.3d 598, 601 n.6 (Pa. Cmwlth. 2014).

3

**Discussion**

Claimant argues that since his total disability status ended on April 30, 2014, either because his weekly benefit had been offset to $0.00 or because he voluntarily withdrew from the workforce, he was entitled to receive his specific loss benefits as of that date.

Section 306(d) of the Act provides, in relevant part:

> Where, at the time of the injury the employe receives other injuries, separate from these which result in permanent injuries enumerated in [Section 306(c)] of [the Act], the number of weeks for which compensation is specified for the permanent injuries **shall begin at the end of the period of temporary total disability which results from the other separate injuries**, but in that event the employe shall not receive compensation provided in [Section 306(c)] of [the Act] for the specific healing period. In the event the employe suffers two or more permanent injuries of the above enumerated classes compensable under [Section 306(c)] of [the Act], he shall be compensated for the largest single healing period rather than the aggregate of the healing periods.

77 P.S. § 513(25) (emphasis added). Accordingly, "[a] claimant is permitted to receive specific loss benefits for the work injury for which he . . . is receiving total disability benefits **only when total disability has resolved** into a specific loss. Consequently, specific loss benefit payment may not begin until after payment of total disability payments ends." *Fields v. Workers' Comp. Appeal Bd. (City of Phila.)*, 49 A.3d 454, 456 (Pa. Cmwlth. 2012) (citation omitted).

Moreover, in *Coker v. Workers' Compensation Appeal Board (Duquesne Light Co.)*, 856 A.2d 257 (Pa. Cmwlth. 2004), a claimant who was awarded total disability and specific loss benefits, and whose total disability benefits were substantially offset by his pension benefits, similarly argued that his specific loss benefits should be paid because his total disability ended when the pension benefits

4

offset became effective. This Court affirmed the Board's decision denying the claimant immediate specific loss benefit payouts because the claimant's total disability had not ceased. The *Coker* Court ruled that a "**[c]laimant cannot collect, concurrently, specific loss benefits and total disability benefits, even though the disability benefits have been offset** . . . ." *Id.* at 262 (emphasis added). The Court further observed that the total of the claimant's employer-funded disability payments (*i.e.*, pension and WC benefits) equaled the amount of WC benefits to which the claimant was entitled under the Act.

> The WCJ in the instant matter made the following findings:[4]

> 9. This [WCJ] finds [*Coker*] to be controlling. . . . Claimant argues that *Coker* is distinguishable from the instant case because the claimant there received a reduced benefit, while Claimant in the instant case is receiving nothing due to various offsets. This [WCJ] finds that the rationale of *Coker* is no less applicable where [a] claimant is no longer receiving *any* monetary benefits directly from [an employer].

> 10. In addition to the rationale of *Coker*, Claimant's argument must also be rejected based on the definitions and parameters of 'total disability' and 'partial disability' set forth in the Act. Under [S]ection 306 of the Act[,] total

---

[4] The law is well-settled that "[t]he WCJ has exclusive authority to act as fact finder, determine credibility of witnesses, and weigh the evidence. The WCJ's findings will not be disturbed if they are supported by substantial, competent evidence." *Stepp*, 99 A.3d at 601 n.6.

> 'Moreover, we are to draw all reasonable inferences which are deducible from the evidence in support of the factfinder's decision in favor of that prevailing party.' It does not matter if there is evidence in the record supporting findings contrary to those made by the WCJ; the pertinent inquiry is whether the evidence supports the WCJ's findings.

*3D Trucking Co., Inc., v. Workers' Comp. Appeal Bd. (Fine & Anthony Holdings Int'l)*, 921 A.2d 1281, 1288 (Pa. Cmwlth. 2007) (quoting *Waldameer Park, Inc. v. Workers' Comp. Appeal Bd. (Morrison)*, 819 A.2d 164, 168 (Pa. Cmwlth. 2003)) (citation omitted).

disability is discontinued under the following circumstances:

> a) Where the 'employe is employed and receiving wages' ([Section] 306(a)(2) [of the Act)];
>
> b) Where the 'employe is incarcerated after a conviction' ([Section] 306(a.1) [of the Act)];
>
> c) Where it has been determined that claimant's degree of impairment is less than fifty per centum following receipt of 104 weeks of total disability, in accordance with [Section] 306(a.2) [of the Act];[5]
>
> d) Where 'earning power' has been established by expert opinion, pursuant to [Section] 306(b)(2) [of the Act] (also known as the 'labor market survey' process);
>
> e) 'After disability shall cease' ([Section] 306(a)(1) [of the Act]).

11. Clearly, none of the above conditions exist here. The statute does not provide for discontinuance of temporary total disability based on monetary offsets against total disability benefits. **Claimant remains in 'total disability' status, as a matter of law.** Section 306(d) [of the Act] provides that specific loss payments begin 'at the end of the period of temporary total disability'. This is consistent with the concept that temporary total disability is a legal status, and is not defined by, or dependent upon, the receipt of a check directly from [an employer].

12. Based on the evidence of record, this [WCJ] finds as fact that Claimant's total disability benefits have not 'ended' solely because he does not receive a check from [Employer].

13. Claimant's alternative theory is that his temporary total disability benefits must be suspended because he has 'removed himself from the work force'. The party seeking to suspend benefits bears the burden of proving that the

---

[5] On June 20, 2017, the Pennsylvania Supreme Court declared Section 306(a.2) of the Act unconstitutional. *Protz v. Workers' Comp. Appeal Bd. (Derry Area Sch. Dist.)*, 161 A.3d 827 (Pa. 2017).

Claimant has voluntarily removed himself or herself from the workforce (*i.e.*, retired) for reasons unrelated to the work injury. *City of Pittsburgh v. [Workers' Comp. Appeal Bd.] (Robinson)*, [6]7 A.3[d] 1194 (Pa. 2013)[.]

14. Claimant has not presented any evidence that he voluntarily retired from the workforce. At the final hearing, Claimant's counsel suggested that a deposition of Claimant would be taken to address this issue. However in his brief, Claimant suggests that he 'admitted' and 'stipulated' that he has left the workforce. A bilateral stipulation has not been entered into. This [WCJ] cannot make a finding of fact based on the representations of counsel. Further, this [WCJ] is highly skeptical of Claimant's argument that he has 'removed himself from the workforce' now that it is in his interest to do so. Claimant received a pension beginning on July 7, 2007, according to the [Stipulation]. Presumably[,] he had no intention of continuing to work at that point, but he did not argue at that time that he had removed himself from the workforce for reasons unrelated to the work injury. Obviously, it was not in his interest to do so at that point, as he was continuing to receive a disability check from [Employer].

15. Based on the evidence of record, this [WCJ] finds as fact that Claimant has not met his burden of proving that his total disability benefits should be suspended.

16. Based on the above, this [WCJ] finds as fact that Claimant is not entitled to begin receiving specific loss benefits.

WCJ 3/1/16 Dec. at 3-5 (emphasis added; footnote and bold emphasis omitted).

The Board also declared that *Coker*'s reasoning applies here, stating:

The reason Claimant is receiving no payment is because **together the offset for receipt of a retirement payment, Social Security retirement benefits, and the subrogation interest in the third[-]party settlement total more than the amount of disability payment to which Claimant is entitled** under the Act. As in *Coker*, this situation is different than a claimant who receives no payment because his total disability benefits have ended and he is no longer entitled under the Act to receive those benefits. *Id.*

Board Dec. at 4-5 (emphasis added). The Board agreed with the WCJ that Claimant remained totally disabled as a matter of law, and that there was no record evidence support for Claimant's position that he voluntarily retired from the workforce as of April 30, 2014.

Notably, Claimant does not challenge that his WC benefits are subject to offsets, nor does he claim that the applied offset amounts are incorrect. Rather, Claimant asserts that since he no longer received WC benefit payments as of April 30, 2014 because his disability ended or he voluntarily retired, his specific loss benefit payments should have commenced as of that date.

**Total Disability Status**

Section 306(d) of the Act clearly and unambiguously states that specific loss payments "shall begin at the end of the period of temporary total disability . . . ." 77 P.S. § 513(25). Therefore, unless and until Claimant's total disability *status* ends, he is not entitled to receive his specific loss benefits. At the July 28, 2015 WCJ hearing, Claimant's counsel confirmed that Claimant "is totally disabled, but he's not getting any further checks." Notes of Testimony, July 28, 2015, at 4; *see also* WCJ Finding of Fact 11.

Claimant did not challenge the offsets, nor offer valid legal support for his position that his specific loss payments must commence as of April 30, 2014 because his total disability *payments* were offset to $0.00. More importantly, Claimant fails to recognize that he continues to be fully compensated for this total disability status by the Employer-funded pension, Social Security, and third-party settlement payments, rather than WC indemnity checks.

This Court has ruled that "payment of specific loss benefits . . . may not begin **until disability payments are no longer due and owing**." *Cmty. Serv. Grp. v. Workers' Comp. Appeal Bd. (Peiffer)*, 976 A.2d 594, 597 (Pa. Cmwlth. 2009)

8

(emphasis added); *see also Coker*. Accordingly, regardless of whether Employer's April 30, 2014 Notice of WC Benefit Offset reduced Claimant's WC benefit *payments* to $0.00 after permissible offsets are applied, Claimant remains in total disability status as a matter of law, and his total disability payments are still due and owing (*i.e.*, but for the offsets, Claimant would be receiving WC indemnity payments). **Only after Claimant's total disability benefits are no longer *due and owing* will he be entitled to collect his specific loss payments**.

Claimant asserts that *Sharon Steel Corporation v. Workers' Compensation Appeal Board (Frantz)*, 790 A.2d 1084 (Pa. Cmwlth. 2002), rather than *Coker*, controls the outcome of the instant matter. *See* Claimant Br. at 22. However, in *Sharon Steel* as in *Coker*, this Court declared that Section 306(d) of the Act mandates that specific loss payments only begin when total disability ends. In *Sharon Steel*, the issue was whether a claimant could simultaneously receive specific loss and partial disability benefits. The Court held that since Section 306(d) of the Act on its face only limits the simultaneous payment of specific loss and *total* disability benefits, a claimant could simultaneously receive specific loss and *partial* disability benefits. Because partial disability payments are not at issue in the instant appeal, *Sharon Steel* is factually distinguishable.

Claimant states in his brief that "[t]otal disability status IS 'dependent upon receipt of a check.'" Claimant Br. at 27. He cites *City of Scranton v. Workmen's Compensation Appeal Board (Rideski)*, 638 A.2d 944 (Pa. 1994), *Turner v. Jones & Laughlin Steel Corporation*, 389 A.2d 42 (Pa. 1978), *Acme Markets, Inc. v. Workmen's Compensation Appeal Board (Hopiak)*, 562 A.2d 419 (Pa. Cmwlth. 1989), and *Frank Irey, Jr., Inc. v. Workmen's Compensation Appeal Board (Klemencic)*, 448 A.2d 647 (Pa. Cmwlth. 1982), in support of his position. *See* Claimant Br. at 27.

9

The *Sharon Steel* Court summarized those cases as follows:

Our Supreme Court interpreted Section 306(d) [of the Act] . . . and its *Turner* decision in *City of Scranton* by indicating:

> Contrary to [the employer's] arguments, Section 306(d) [of the Act] merely sets the timetable for when payments of specific loss benefits are to begin. The section does not explain or define when an injured employee is entitled to payments or when a period of temporary total disability 'ends' but **only requires that any additional payments for other injuries begin at the end of the temporary *total* disability.** [The employer] argues, however, that we determined in *Turner* . . . , that the 'end' of a temporary total disability can only occur by an eventual healing or natural termination and that, without such an 'end' . . . the entitlement to specific loss benefits cannot ripen. This is a misreading of *Turner*.

*City of Scranton, . . .* 638 A.2d at 946 (emphasis added).

We also find our decision in *Frank Irey, Jr., Inc. . . . ,* instructive. There, the claimant was awarded specific loss benefits and partial disability benefits where he had sustained the loss of the use of his left hand and separate and distinct injuries to his face, mouth, left elbow and left leg. Similarly, we held in *Acme Markets, Inc. . . . ,* that a claimant could receive specific loss benefits resulting from one accident concurrent with total disability benefits that were the result of another, separate accident. In the instant matter, [the claimant] underwent a period of temporary total disability, then subsequently returned to work. At the time he returned to work, [the claimant] was eligible for partial disability benefits, because his wages were below his pre-injury wages. [The claimant's] return to work ended his period of temporary *total* disability, and he was eligible for partial disability *as well as* specific loss benefits. This is consistent with Section 1903(a) of the Statutory Construction Act [of 1972], 1 Pa.C.S. § 1903(a), and with current case law.

*Sharon Steel*, 790 A.2d at 1089 (footnote omitted). These cases clearly support the WCJ's decision that **Claimant's total disability *status* determines when his specific loss payments commence, not whether he receives a WC indemnity check**.

Claimant further contends that if Employer does not have to pay his specific loss benefits until his total disability status ends, he may never receive those benefits, which would render the WCJ's 9/12/08 Decision a nullity and unconstitutionally deprive him of his property without due process. *See* Claimant Br. at 28. The *Coker* Court acknowledged:

> The Court is sympathetic to the [c]laimant's plight . . . . He may never receive the weeks of specific loss benefits to which he is entitled, if he remains totally disabled. However, **we are bound by the express and unambiguous language of the statute, which specifically states that specific loss benefit payments do not begin until the period of total disability ends**. [The c]laimant's total disability has not ended and he is receiving in full the amount of employer[-]funded payments to which he is entitled under the Act.

*Id.* at 262 (emphasis added; footnote omitted).

After thoroughly reviewing the record, this Court holds that the Board properly upheld the WCJ's determination that Claimant's total disability *status* did not end or even change as of April 30, 2014. Because Claimant remained eligible for total disability benefits (whether or not subject to offset), the WC statutory language clearly states he is not entitled to receive his specific loss payments as of that date.

### Retirement

Pennsylvania law requires that "disability benefits must be suspended when a claimant voluntarily leaves the labor market upon retirement." *Se. Pa. Transp. Auth. v. Workmen's Comp. Appeal Bd. (Henderson)*, 669 A.2d 911, 913 (Pa. 1995); *see also Robinson*. A claimant has not voluntarily retired from the labor

11

market if the retirement was caused by the work injury. *Schmidt v. Workmen's Comp. Appeal Bd. (Fetch)*, 594 A.2d 812 (Pa. Cmwlth. 1991); *see also Robinson*. Therefore, the party seeking to suspend benefits has the burden of proving that the claimant has voluntarily retired for reasons unrelated to the work injury.[6] *Robinson*. Moreover, receipt of a pension and/or Social Security benefits does not prove voluntary retirement since the claimant remains eligible to simultaneously receive a pension and/or Social Security benefits and WC benefits. *See Day v. Workers' Comp. Appeal Bd. (City of Pittsburgh)*, 6 A.3d 633 (Pa. Cmwlth. 2010).

When the WCJ commenced the October 27, 2015 hearing, he summarized the parties' agreement that the record would be closed in 90 days and, within that time, Claimant would give a deposition regarding his voluntary retirement, and the parties would brief that issue.[7] *See* Notes of Testimony, October 27, 2015, at 3-4, 7. However, according to the WCJ's 3/1/16 Decision, Claimant did

---

[6] Because an employer is typically the party seeking a suspension of WC benefits, the employer usually has the burden of proof; however, in this case, since Claimant is seeking the suspension, Claimant has the burden of proof.

[7] As the July 28, 2015 WCJ hearing ended, the WCJ granted the parties 90 days to stipulate or supply documentation that Claimant's July 16, 2013 Impairment Rating Evaluation (IRE) changed his disability status from total to partial, making him eligible to receive his previously-awarded specific loss benefits. Claimant supplied the IRE. However, the WCJ ultimately concluded:

> Claimant has submitted an [IRE] of Dr. Jyothi Chinta, M.D. performed on July 16, 2013, which he also cites in support of his contention that he is partially disabled, and is no longer totally disabled. However[,] that [IRE] was performed pursuant to the 6th Edition of the [American Medical Association's (AMA)] Guides to [the Evaluation of] Permanent Impairment and is therefore invalid pursuant to *Protz* . . . .

WCJ 3/1/16 Dec. at 4 n.1. In *Protz*, our Supreme Court ruled that, by enacting Section 306(a.2) of the Act, the General Assembly impermissibly delegated its legislative authority to the AMA; thereby, violating article II, section 1 of the Pennsylvania Constitution, which requires that all legislative power shall be vested in the General Assembly.

12

not supply testimony regarding his retirement, no admission or stipulation appears of record, and counsel's representations to that effect were not evidence.[8]

After reviewing the record, this Court holds that the Board properly upheld the WCJ's determination that Claimant failed to prove that he voluntarily retired as of April 30, 2014 for reasons unrelated to the work injury. Because Claimant remained eligible for total disability benefits (whether or not subject to offset), he was not entitled to receive his specific loss payments as of that date.

## Conclusion

Based on the foregoing, the Board's order is affirmed.

_____
ANNE E. COVEY, Judge

---

[8] *See Brady v. Workers' Comp. Appeal Bd. (Morgan Drive Away, Inc.)*, 923 A.2d 529 (Pa. Cmwlth. 2007) (counsel's statements at an administrative proceeding are not evidence).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Cook,                          :
                    Petitioner       :
                                      :
          v.                          :
                                      :
Workers' Compensation Appeal          :
Board (Department of                  :
Transportation),                      :     No. 765 C.D. 2017
                    Respondent       :

## O R D E R

AND NOW, this 18th day of May, 2018, the Workers' Compensation Appeal Board's May 12, 2017 order is affirmed.

_____
ANNE E. COVEY, Judge