# [J-88-2024]
## IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

## TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.

| | | |
|---|---|---|
| KRISTINA STEETS, (DECEASED), | : | No. 3 MAP 2024 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 512 CD |
| | : | 2022 entered on May 8, 2023, |
| v. | : | Affirming the Order of the Workers' |
| | : | Compensation Appeal Board at No. |
| | : | A21-0974 entered on April 26, 2022 |
| CELEBRATION FIREWORKS, INC. | : | |
| (WORKERS' COMPENSATION APPEAL | : | ARGUED: November 19, 2024 |
| BOARD), | : | |
| | : | |
| Appellee | : | |

## OPINION

**JUSTICE DONOHUE**                                            **DECIDED: May 30, 2025**

In 2017, Kristina Steets ("Steets") was horrifically injured during the course of her employment with Appellee, Celebration Fireworks, Inc. ("Employer"). Employer accepted liability for Steets' total disability under the Workers Compensation Act ("WCA" or "the Act")[1] when it filed a Notice of Compensation Payable ("NCP") in 2018. In 2019, Steets filed claim and review petitions seeking to amend the description of her injuries in the NCP and requesting specific loss benefits. The Workers' Compensation Judge ("WCJ") amended the NCP as requested and granted Steets' petition for specific loss benefits, decisions later affirmed by the Workers' Compensation Appeal Board ("WCAB") and the Commonwealth Court. *See Kemps v. Steets*, 257 A.3d 1271 (Pa. Commw. 2021)

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 1 et seq.

("*Kemps*").[2]   However, Steets died from her injuries while the Commonwealth Court's decision in *Kemps* was pending.   Appellant, Steets' estate ("the Estate"), subsequently filed claim and review petitions seeking payment of, inter alia, the specific loss benefits awarded to Steets that were still subject to appellate review when she died.   The WCJ denied the Estate's claims beyond the payment of Steets' funeral expenses, and the WCAB affirmed that decision.   The Commonwealth Court affirmed in a split en banc decision, ruling that pursuant to *Estate of Harris v. WCAB (Sunoco, Inc.)*, 845 A.2d 239 (Pa. Commw. 2004), Steets' specific loss benefits did not survive her work-related death. In this matter of first impression, we are asked to overrule *Estate of Harris* and to award specific loss benefits due to Steets to the Estate.

Applying the plain language of Section 410 of the WCA (77 P.S. § 751), we overrule *Estate of Harris* and *Burns International Security Services, Inc. v. WCAB (Crist)*, 469 A.2d 336 (Pa. Commw. 1984) ("*Burns*"), insofar as those decisions held that Section 306(g) of the WCA is the exclusive means by which specific loss benefits survive the death of worker.   Because Steets died "before the final adjudication" of her specific loss benefits claim, Employer was required to pay those specific loss benefits to the Estate. 77 P.S. § 751.

**Background**

While working for Employer on June 30, 2017, Steets was severely injured by an explosion.   On March 13, 2018, Employer accepted liability for Steets' work-related injuries by filing an NCP that described Steets' injuries as the amputation of multiple body parts.  *Kemps*, 257 A.3d at 1273.   However, Steets' condition rapidly deteriorated during the treatment of those injuries.   Consequently, on October 25, 2018, Steets filed claim

---

[2]   John Kemps was the owner and President of Celebration Fireworks during the initial litigation of *Kemps*.

and review petitions seeking to correct the NCP to include traumatic brain injury, septic shock, respiratory failure, dysphagia, quadriparesis, bowel and bladder incontinence, and the loss of use of both arms. *Id*. The WCJ granted her petition for specific loss benefits pursuant to Sections 306(c)(3) and 306(c)(25) (77 P.S. §§ 513(3), (25)),[3] and the WCAB affirmed. *Id*. at 1275-76. In *Kemps*, the Commonwealth Court affirmed the WCAB's decision. *Id*. at 1280 ("[W]e conclude that substantial evidence exists to support the WCJ's finding that [Steets] has lost the use of her arms for all practical intents and purposes.").[4] Consequently, once her total disability benefits ceased, Steets would have been entitled to 840 weeks of specific loss benefits. *Steets v. WCAB (Celebration Fireworks, Inc.)*, 295 A.3d 312, 315 n.2 (Pa. Commw. 2023) ("*Celebration Fireworks*").

However, during the litigation of *Kemps*, Steets died on November 28, 2020, "as a result of complications from bilateral pneumonia caused by her work-related respiratory deficiency." *Celebration Fireworks*, 295 A.3d at 315-16. On March 31, 2021, soon after *Kemps* was decided, the Estate[5] filed claim, review, and penalty petitions seeking, respectively, payment of Steets' funeral expenses, payment of her specific loss benefits, and penalties based upon Employer's failure to pay the previously awarded specific loss benefits. *Id*. at 316. The WCJ granted the claim petition for funeral expenses but denied the review and penalty petition claims. *Id*. The WCAB affirmed the WCJ's decision on April 26, 2022. *Id*. Steets' Estate appealed to the Commonwealth Court.

---

[3] Under Section 306(c)(3) of the WCA, an injured worker is entitled to compensation equal to "sixty-six and two-thirds per centum of wages during four hundred ten weeks" for "the loss of an arm." 77 P.S. § 513(3). Under Section 306(c)(25), a worker is entitled to additional compensation for a healing period up to twenty weeks for the loss of an arm. 77 P.S. § 513(25).

[4] The "sole issue" before the Commonwealth Court in *Kemps* was "whether the WCJ erred in awarding specific loss benefits to [Steets] for the loss of use of both arms." *Kemps*, 257 A.3d at 1276.

[5] The sole beneficiary of the Estate is Steets' non-dependent sister.

*Celebration Fireworks Majority Decision*

In affirming the WCJ's denial of the Estate's claim for Steets' specific loss benefits, the Commonwealth Court first observed that Section 306(c) of the Act provides a schedule to compensate injured employees for permanent losses. *Celebration Fireworks*, 295 A.3d at 315. It noted that because specific loss benefits compensate for "the loss of use of designated bodily members rather than for general loss of earning power," they "are payable without regard to whether the permanent injury has actually caused a wage loss." *Id*. at 316-17 (citation omitted). It further observed that an injured worker cannot receive both specific loss and total disability benefits unless the disabling injuries are separate and apart from the specific loss injuries. *Id*. at 317.[6] If that exception applies, specific loss benefits begin "at the end of the period of temporary total disability which results from the other separate injuries[.]" 77 P.S. § 513. The lower court acknowledged that, as decided in *Kemps*, Steets' permanent loss benefits stemmed from injuries that were separate and apart from those underlying her total disability benefits. *See Celebration Fireworks*, 295 A.3d at 317. Thus, once Steets' total disability benefits ended, she would have been entitled to receive specific loss benefits.

The question before the lower court therefore turned on the survivability of specific loss benefits awarded under the WCA—benefits that Steets had not yet begun to collect because she was still receiving total disability benefits until her death. To answer this question, the majority below first examined the WCA's provisions governing the survival of WCA benefits, recognizing the general rule that when a claimant dies from work-related

---

[6] *See Pocono Mountain Sch. Dist. v. WCAB (Easterling)*, 113 A.3d 909, 914 (Pa. Commw. 2015) ("It is well established that in matters involving specific loss claims, a claimant who sustains an injury that is compensable under Section 306(c) ... is not entitled to compensation beyond that specified in that section even though he may be totally disabled by the injury."). However, there is an "exception to this rule, found in Section 306(d), 77 P.S. § 513," whereby "a claimant may receive benefits for injuries which are separate and distinct from those which normally flow from the specific loss injury." *Id*.

causes, Section 307 of the WCA (77 P.S. § 561) provides survivor rights to those benefits for widowers, surviving children, and other dependents, but only burial expenses when there are no surviving dependents.[7, 8]

However, Section 410 of the WCA provides that "[i]n case any claimant shall die before the final adjudication of his[/her] claim, the amount of compensation due such claimant to the date of death shall be paid to the dependents entitled to compensation, or, if there be no dependents, then to the estate of the decedent." 77 P.S. § 751. The Commonwealth Court determined that any apparent discrepancy between these provisions was resolved in *Estate of Harris*, which in turn had relied on *Endres v. WCAB (City of Philadelphia)*, 677 A.2d 901 (Pa. Commw. 1996) ("*Endres*"). Specifically, the lower court cited *Estate of Harris*' statement that Section 410 "does not provide an independent or supporting basis for a specific loss award[.]" *Estate of Harris*, 845 A.2d at 243 (quoting *Endres*, 677 A.2d at 903).

In *Endres*, the Commonwealth Court considered, inter alia, whether Section 306(d) and/or Section 410 provided a basis to posthumously award specific loss benefits to an injured worker's dependent after the worker died and concluded that neither provision operated in that fashion.

> Section 306(d) of the [WCA] sets forth a schedule for collecting total disability benefits and specific loss benefits and provides that the payment of specific loss benefits is to commence at the end of the temporary total disability.

---

[7] A list of those entitled to survivor benefits is provided in Section 307 of the WCA (77 P.S. § 561(1)-(6)). If there are no applicable dependents described under that provision, the employer is liable only for $7,000 in burial expenses to be paid "directly to the undertaker." *Id*. § 561(7).

[8] Section 306(g) (77 P.S. § 541) governs payments to survivors when an injured worker dies from a cause other than the workplace injury. Although not applicable here because Steets died of her workplace injury, Section 306(g)(7) similarly provides that when there are no surviving dependents, the employer's obligation to an estate extends only to "reasonable funeral expenses[.]" 77 P.S. § 541(7).

Therefore, Section 306(d) merely sets forth the timetable for when specific loss payments are to begin. *City of Scranton* [*v. W.C.A.B. (Rideski)*, 638 A.2d 944 (Pa. 1994)]. Section 410 of the [WCA] is a general provision which states that benefits due to a claimant who dies before final adjudication of his or her claim are payable to the claimant's estate or dependents. This statutory provision does not provide an independent or supporting basis for a specific loss award... .

Section 306(g) relates directly to the receipt of specific loss benefits and is, therefore, a more particular provision. Enacted by the 1972 amendments to the [WCA], Section 306(g) specifically addresses the receipt of specific loss benefits by an injured employee's dependents if the injured employee dies from causes unrelated to the work injury. Further, this Court held in *Burns* … that specific loss benefits are payable to survivors pursuant to Section 306(g) … where the decedent's death is from a cause other than the work injury. Accordingly, Section 306(g) … supports the WCJ's determination that Decedent's death from causes related to the work injury does not entitle [a c]laimant to **simultaneously** collect fatal claim benefits and specific loss payments.

*Endres*, 677 A.2d at 903 (emphasis added) (footnote omitted).

Relying on *City of Scranton*, *Endres*, and *Burns*, *Estate of Harris* found that Section 306(g) governs specific loss survival benefits exclusively, and that they only apply when an employee dies from a cause other than the work injury. *Estate of Harris*, 845 A.2d at 244. Attempting to synthesize these authorities here, the Commonwealth Court determined that "when an employee dies due to a work injury while collecting total disability benefits and before specific loss benefits are payable, the only specific loss payments due are reasonable ... funeral expenses to be paid to the funeral home[,]" regardless of the language of Section 410. *Celebration Fireworks*, 295 A.3d at 320. It reasoned that

[Steets] was receiving total disability benefits[] and was awarded specific loss benefits that would commence after her total disability ceased. [Her] work-related injuries caused her death. She had no dependents with rights to either her total disability or specific loss benefits when she died. Under such circumstances, Employer's only statutory obligation was to

pay $7,000.00 in funeral expenses to the funeral home, which it did.

*Id*.

In so holding, the majority affirmed the WCJ's conclusion that

> There is nothing in the [WCA] that requires an [e]mployer to pay specific loss benefits in a case where the injured worker died as a result of the work injury that caused the specific loss. [The Estate] has argued that the right to the specific loss benefit became vested when it was awarded by [the WCJ to Steets in *Kemps*] and that the vested right passed from [Steets] to her estate. [The Estate] has attempted to distinguish this case from other cases because, in this case, the specific loss benefits were awarded prior to [Steets'] death. There is nothing in the language of the [WCA] or in the case law interpreting the [WCA] that supports this view. Furthermore, even if this argument w[as] accepted, there is nothing in the statutory scheme of [the WCA] that would require the payment of these benefits to anyone except dependents. Since it is undisputed that [Steets] had no dependents, Employer is not obligated to pay the specific loss benefits [to the Estate].

*Id*. at 320-21 (quoting WCJ Decision at 4).

The majority rejected the Estate's claims that *Estate of Harris* violated the rules of statutory construction and the spirit of the WCA's humanitarian purpose by having the "practical effect" of providing greater benefits to workers who die from non-work-related causes than those who die from their work-related injuries. *Id*. at 321. Instead, if found that its interpretation of the WCA is buttressed by the General Assembly's failure to take any steps after *Endres* and *Estate of Harris* were decided. *Id*. at 322.

*Celebration Fireworks Dissent*

The *Celebration Fireworks* dissent[9] would have instead reversed the WCAB and directed payment of specific loss benefits to the Estate based primarily on its interpretation of plain text of Section 410, asserting that provision "does not condition the

---

[9] The dissent was authored by Judge Ellen Ceisler and joined by President Judge Renee Cohn Jubelirer.

payment of compensation upon a specific cause of death." *Celebration Fireworks*, 295

A.3d at 323 (Ceisler, J., dissenting).

The dissent cites *White v. WCAB (Good Shepherd Rehabilitation Hospital)*, 666

A.2d 1128 (Pa. Commw. 1995),

> in which a claimant's estate sought payment of total disability
> benefits owed at the time of her death. A [WCJ] denied the
> claim, reasoning that Section 410 "applies only to specific loss
> claims and death claims." *Id*. at 1129. Although we affirmed
> the WCJ on other grounds,[2] we agreed with the claimant's
> estate that "Section 410's scheme of distribution applies to all
> claims regardless of the nature of the loss[,]" including specific
> loss benefits, fatal claims, and total disability benefits. *Id*. at
> 1130 (emphasis added).
>
>> [2] This [c]ourt concluded that the claimant's
>> widower was not a "dependent" under the Act
>> and that the deceased claimant's benefits
>> should be paid to her estate. *White*, 666 A.2d
>> at 1131.

*Celebration Fireworks*, 295 A.3d at 323 (Ceisler, J., dissenting).

The dissent contends that at the time of her death, Steets' specific loss benefits

claim was before the Commonwealth Court in *Kemps*:

> The relevant language in Section 410 only becomes operable
> following a claimant's death and, unlike Section 306(g)[,] ...
> Section 410 does not distinguish between a work-related
> death or one that is wholly unrelated to the work injury.
> Therefore, under Section 410, if a claimant dies prior to final
> adjudication of a claim, whatever the cause, the claimant's
> dependents or estate "shall be paid" the amount of
> compensation due "to the date of death[,]" regardless of the
> nature of the loss. 77 P.S. § 751; *White*, 666 A.2d at 1130.

*Id*. at 324.

The dissent supports this conclusion through its reading of Section 306(g)'s

legislative history, contending that when amending that provision in Act 12 of 1972,[10] the

General Assembly did not intend to prevent the payment of specific loss benefits to the

---

[10] The Act of March 29, 1972, P.L. 159, No. 12 ("Act 12").

dependents or the estate of a claimant upon death when the death is caused by a work injury. It contends that before Act 12, Section 306(g) instructed that liability for compensation shall cease should "the claimant die from some other cause than the injury[.]" *Id*. Subsequent to Act 12, it took its current form, which permits payment "to which the deceased would have been entitled" to a claimant's dependents. 77 P.S. § 541. "Critically," the dissent argues, "while Act 12 effectuated minor amendments to Section 410, it made no changes to the language relevant in the instant appeal" and "prior to the enactment of Act 12 and the revisions to Section 306(g), the WCA contained no language to suggest that specific loss benefits did not survive the work-related death of a claimant." *Celebration Fireworks*, 295 A.3d at 324 (Ceisler, J, dissenting).

While the dissent acknowledges an amendment to a statute may typically signal a change in legislative intent, it maintains that "Act 12 indicates a legislative intent to provide for the survivability of specific loss benefits, without regard to the claimant's cause of death, and not an intent to revoke the survivability of specific loss benefits from the dependents or estate of a claimant whose work injury resulted in death." *Id*. The dissent distinguishes *Estate of Harris* on the grounds that Harris had neither sought nor been awarded specific loss benefits before her death. *Id*. It was Harris' estate that posthumously attempted to elect for specific loss benefits instead of total disability. In that context, the dissent remarks that the statement quoted from *Endres* in *Estate of Harris*, that Section 410 does not "provide an independent or supporting basis for a specific loss award," takes on a different meaning, i.e., that Section 410 does not provide an independent basis for awarding specific loss benefits posthumously when they were never sought by the claimant during their life. *See id.* at 325. Thus, the dissent concludes that "because Harris was not awarded specific loss benefits prior to her death, the issue

of whether previously-awarded specific loss benefits could survive the work-related death of a claimant was not before" the Commonwealth Court in *Estate of Harris*. *Id*.

**Issue**

We granted allocatur to decide the following question:

> Because specific loss benefits are not payable until either disability ceases or the worker dies, did [the] Commonwealth Court err by limiting receipt of specific loss benefits posthumously to only claimants who die because of a cause unrelated to the work injury?

*Steets v. Celebration Fireworks, Inc.*, 311 A.3d 1005 (Pa. 2024) (per curiam).

**Parties' Arguments**

*Appellant - the Estate*

While the dissent argued that *Estate of Harris* was distinguishable from this case, the Estate contends it should be overruled insofar as it has been read to categorically bar the survivability of specific loss benefits when an injured worker dies of their injuries. The Estate's arguments align with the dissent insofar as they both contend that the text and legislative history of the relevant provisions of the WCA show that the General Assembly never intended the result reached by the majority below. The Estate argues that Section 306(g) does not apply where a worker dies of a work-related injury and, critically, that it does not imply that specific loss benefits do not survive death in the event that the worker dies from their injury. Rather, like the dissent in *Celebration Fireworks*, the Estate maintains that Section 410 controls here because Steets died while the specific loss benefits awarded by the WCJ were being contested in *Kemps*.

The Estate argues that the plain text of Section 306(g) only applies to injured workers who die from non-work-related causes, "not to the exclusion of injured workers who die from their injuries." The Estate's Brief at 17. It contends that Act 61 did not

change "the provision that awarded specific loss benefits only after a disability ceases, even if awarded posthumously." *Id*. That is, the Estate contends that Act 61 did not serve to limit or truncate Section 410 so as to exclude an injured worker who was awarded specific loss benefits prior to her death from a work-related cause.[11] It argues that Steets' death terminated her total disability benefits, but simultaneously triggered payment of her previously-awarded specific loss benefits, benefits that vested when awarded by the WCJ. *Id*. at 17-18. The Estate contends that it was only Steets' "receipt of the benefits that was deferred until she was no longer disabled, i.e., upon death." *Id*. at 18. It maintains that this reading is consistent with our decision in *City of Scranton*, wherein we held that specific loss benefits were payable upon death.[12]

---

[11] The Estate observes that although Sections 306(c), 306(d), and 306(g) of the WCA are spread out across several sections of Purdon's Consolidated Statutes, they all appear together in Section 306 of the WCA. It notes that the history of Section 306 shows that Sections 306(f) and 306(g) were originally together in one paragraph but were later separated at some point before the 1972 amendments to the WCA in Act 61 of 1972. The Estate's Brief at 15. Before 1972, Section 306(g) only read: "Should the employe die from some other cause than the injury, the liability for compensation shall cease."

Act 61 of 1972 gave Section 306(g) its current form and "specifically awarded compensation to heirs if the injured worker died from a cause other than the work injury, thus broadening the parties entitled to benefits." *Id*. at 17. The Estate avers that

> Act 61 reflects that Section 306(g) was a subparagraph of Section 306, not a separate provision. It was part of other amendments to the [WCA] increasing the benefits to injured workers, including an increase in minimum wage loss benefits and the value of certain specific loss benefits. There is no reduction of benefits in this amendment.

*Id*.

[12] "Based on this record, we conclude that upon the termination of Decedent's total disability, Section 306(d) required that his compensation begin for his specific loss. Since these payments could not be made directly to him, Section 306(c) provides that these compensation benefits are payable directly to his surviving spouse[.]" *City of Scranton*, 638 A.2d at 947.

*City of Scranton* emphasized that regardless of whether permanent disabilities end by healing, death, or election of specific loss benefits—all events trigger the right to receive specific loss benefits if previously awarded. *See City of Scranton*, 638 A.2d at 946 (citing *Turner v. Jones & Laughlin Steel Corp.*, 389 A.2d 42 (Pa. 1978)). The Estate stresses that, contrary to the Commonwealth Court's view, Section 306(g) does not apply to workers who die from their injuries, and that Act 12 of 1972 did not "amend the rights" of workers who die from their work-related injuries. The Estate's Brief at 19.[13] The Estate also contends that the legislative history of Section 306(g) supports it view, and that Section 306(g) must be considered in light of decisions made contemporaneous to the 1972 amendments that expanded benefits for survivors. *See Kujawa v. Latrobe Brewing Co.*, 288 A.2d 847 (Pa. Commw. 1972), *affirmed*, 312 A.2d 411 (Pa. 1973).[14]

Emphasizing that our rules of construction require primary attention to legislative intent, and that this Court has held that the WCA must be liberally construed to effectuate

---

[13]  The Estate asserts that Purdon's confused the matter when it titled 77 P.S. § 541, the section in which 306(g) appears, "Payments to survivors in event of death from cause other than injury." The Estate's Brief at 19 (citing 1 Pa.C.S. § 1924 (stating headings shall not be considered to control statutory construction)).

[14]  In *Kujawa*, the Commonwealth Court held that no death benefits were payable if the worker's death occurred after a 300-week period set forth in the WCA. Act 61 of 1972 passed while *Kujawa* was pending on appeal and this Court affirmed the following year. Kujawa, 312 A.2d at 413 ("Since the appellant's claim is founded on her husband's death and that death occurred more than three hundred weeks after the accident, the clear language of Section 301(c) requires that this claim be barred."). Section 301(c) provides in relevant part that "wherever death is mentioned as a cause for compensation under this act, it shall mean only death occurring from such injury and its resultant effects, and occurring within three hundred weeks after the accident." 77 P.S. § 411. But Act 61 was not in effect when Kujawa died. The Estate asserts that after Act 61 came into effect, Section 306(c) benefits included specific loss benefits, benefits that are not paid until after total disability benefits cease, i.e., when the worker dies or after the 300-week period during which total disability benefits are paid.

its humanitarian purpose, the Estate urges that we overrule *Estate of Harris* because it penalizes "the most seriously injured workers and provides greater benefits to workers who die from non-work-related causes than those whose injuries ultimately cause their death beyond the time for filing a Fatal Claim petition." The Estate's Brief at 24. The Estate contends that the analysis of the WCJ, the Board, and the majority in *Celebration Fireworks* is inconsistent with the "plain language" of the Act, because the award of specific loss benefits was "separate from and payable after [Steets] ceased receiving her disability benefits, which in this case would be upon death." *Id*. at 25. It avers that the "law of the case" was established by the award of specific loss benefits to Steets in *Kemps* such that Employer was required to pay specific loss benefits upon the cessation of total disability benefits, and that the *Celebration Fireworks* decision effectively undermines that award by depriving the Estate of its ability to recover. The Estate maintains that "Section 306(d) of the Act applies to situations in which 'the employe receives other injuries, separate from those which result in permanent injuries enumerated in clause (c) of this section,' which is the case here." *Id*. at 26.

In the Estate's reading, *Estate of Harris* abolishes "the ability of injured workers to receive specific loss benefits if they die because of work injuries and the death occurs more than three years after they were injured." *Id*. at 27. It faults *Estate of Harris* for focusing on Section 306(g) while ignoring other provisions of the WCA, such as Section 410. The Estate argues that *Estate of Harris* wrongly determined that Section 306(g) limits the survival of specific loss benefits to injured workers who die from non-work-related causes. *Id*. at 29. It contends that Section 306(g) "is not written in the alternative; it is written to address the payment of benefits when an injured worker's death is not work-

related." *Id*. The Estate maintains that Section 306(g) instead provides that "**even if** an injured worker dies from a cause other than the work injury," previously awarded specific loss benefits are payable to dependents and heirs, and that "Section 306(g) does not address and, therefore, does not bar payment of specific losses when an injured worker dies from a work injury." *Id.* (emphasis added). The Estate asserts that this results in a windfall for the employer/insurer without any discernable purpose, asserting that if Steets had died from something other than her work injury, the Estate would have received $226,840. *Id*. at 30.

The Estate alleges that one can come to a reasonable interpretation to avoid this disparity by reading Section 306(g) as a provision clarifying the benefits available when a work injury did not cause the death rather than indirectly suggesting an inexplicable legislative intent to exclude payment of benefits to survivors if the work injury caused the death. Thus, the Estate counsels that the *Celebration Fireworks* dissent is correct and aligns with a liberal construction of the WCA.

Finally, the Estate maintains that the interpretation of *Estate of Harris* renders Section 410 meaningless with respect to specific loss benefits after a worker's death and is irreconcilable with Section 307(6)'s "requirement that fatal claim benefits—not specific losses—be awarded to a dependent of a deceased worker, whereas specific loss benefits may be payable to an Estate where dependency is not required." *Id*. at 34-35.

In sum, the Estate asks this Court to overrule *Estate of Harris*, hold that Section 306(g) does not apply to the payment of specific loss benefits to the estate of an injured worker when the injured worker dies from a work injury, and award specific loss benefits to the Estate by operation of Section 410.

Employer maintains that Sections 306 and 307 work together to ensure "that **dependents** of a seriously injured employee will receive some level of compensation following his/her death regardless of its cause." Employer's Brief at 7 (emphasis added). However, Employer maintains that neither Sections 306 nor 307 award death benefits to the nondependent heirs of injured workers. Employer believes this is consistent with the WCA's purpose to benefit the injured worker and their dependents. It rejects that Section 410 provides an independent source of death benefits applicable to the estate or heirs of an injured worker. *Id*. at 8. Although Employer agrees with the Estate that the WCA must be construed liberally to effectuate its purpose, it contends that the plain text is the best evidence of the legislative intent and that there is no discernable intent to benefit non-dependent heirs beyond payments for funeral expenses. *Id*. at 9.

Employer explains that while there was nothing improper about awarding both total disability and specific loss benefits to Steets, it is undisputed blackletter law that those benefits cannot be paid simultaneously. *Id*. at 12. Employer maintains that Section 306(d) sets a timetable for the payment of specific loss benefits and provides that compensation for specific loss benefits begins at the end of the period of temporary total disability which results from the other separate injuries. *Id*. at 13 (citing 77 P.S. § 513). Employer agrees with the Estate insofar as those benefits ended in this case when Steets died. *Id*. It disagrees that this translates into a benefit for the Estate. *Id*.

Employer contends that Section 306 defines benefits payable to injured workers, and Section 307 defines death benefits. *Id.* at 14. It urges that death benefits are payable only to "surviving widows, widowers, dependent children, dependent parents, and

dependent siblings with **an independent right** to benefits based on the deceased employee's wages" and, whether or not there are such dependents, Section 307 also requires an employer to pay funeral expenses. *Id*. at 14-15 (emphasis in original). It is undisputed that the Estate was paid for those funeral expenses, and Employer argues that nowhere in Section 307 is there a provision that provides death benefits, even for dependents, when a worker dies from a non-work-related cause. *Id*. at 16.

Employer believes this legislative choice was made more than one hundred years ago when Section 306(f) read "Should the employe die from some other cause than the injury, the liability for compensation shall cease." *Id*. at 17 (quoting Section 306(f) (repealed)). Employer agrees with the Estate that this sentence was incorporated into 306(g) between 1921 and 1972, and then Act 61 of 1972 "eliminated the statutory mandate that ceased all liability when the employe died from some cause other than the work injury" and "created a new entitlement to benefits payable when the employe died from some cause other than the work injury." Employer's Brief at 17. Employer states that specific loss benefits enumerated in Sections 306(c)(1)-(25) are payable to dependents when the death was for a non-work injury, "mirroring" the class of individuals permitted to collect under Section 307 when the death is work-related.

Employer disagrees with the Estate's reading that "Section 306(g) 'explains that **even if** an injured worker dies from a cause other than the work injury, her Estate is entitled to payment of previously awarded specific loss benefits.'" *Id*. at 19 (citing the Estate's Brief at 11, 29 (emphasis in original)). In this regard, Employer argues that workers' compensation benefits are not the equivalent of a civil judgment; instead, they can only be distributed in accordance with the express terms of the WCA. *Id*. It contends

that Section 306(d) of the WCA "provides that compensation specified for the permanent injuries cannot begin until the period of temporary total disability which results from the other separate injuries ends," and that it "does not explicitly provide, nor has it ever been interpreted, as creating a general right to survivability of specific loss benefits regardless of the workers' cause of death." *Id*. at 19-20. Indeed, Employer maintains that the Commonwealth Court has held that there is no guarantee that the injured worker would ever receive such an award. *Id*. at 20 (citing *Coker v. WCAB (Duquesne Light Co.)*, 856 A.2d 257 (Pa. Commw. 2004)). In *Coker*, an injured worker was receiving temporary disability benefits and was awarded 685 weeks of specific loss benefits to follow. When his pension kicked in and reduced his weekly benefits, Coker sought payment of his specific loss benefits. The *Coker* court rejected the claim, reasoning that the "express and unambiguous language of the statute" states "that specific loss benefit payments do not begin until the period of total disability ends." *Coker*, 856 A.2d at 262. However, because Coker's total disability had not ended, he was "receiving in full the amount of employer funded payments to which he is entitled under the [WCA]." *Id.*

Employer challenges the Estate's assertions that Act 61 of 1972 awarded compensation to heirs. Employer's Brief at 21-22. It claims this misrepresents Act 61 (as codified in Sections 306 and 307) because nowhere is the term "heirs" used. Rather, the operative language used was "dependents." *Id*. at 22. Employer also rejects the claim that the Estate is left out of hundreds of thousands of dollars because Steets' died of a work injury rather than from an unrelated cause; it asserts instead that the result is the same either way—the Estate was only entitled to burial expenses. *Id*. at 22-23.

Employer endorses the decisions in *Estate of Harris*, *Endres*, and *Burns*. It also highlights that in *Burns*, a case involving a surviving widow, the Commonwealth Court observed that "a prerequisite to payment of specific loss payments to survivors is that the claimant's death was from a cause other than the injury." *Id*. at 25 (quoting *Burns*, 469 A.2d at 338).

Employer notes that the Estate and the Pennsylvania Association for Justice ("PAJ"), which filed an amicus brief in favor of the Estate, take incompatible positions on the operation of Section 410. It contends that PAJ's alternative analysis—that the *Kemps* court directly awarded Steets' specific loss benefits to the Estate via Section 410—is equally unavailing.[15]

---

[15] Amicus, PAJ, observes that Employer continued to pursue its appeal before the Commonwealth Court in *Kemps* after Steets died on November 28, 2020. The matter in *Kemps* was submitted on the briefs to the Commonwealth Court on March 5, 2024 (more than three months after Steets died) and the case was then decided on May 24, 2021. PAJ contends that because Employer's continued litigation of Steets' specific loss benefits after she died indicates that it "believed that the award [of specific loss benefits] might be payable to" the Estate. PAJ Brief at 4. Regardless, PAJ contends that when the judgment was issued in *Kemps* approximately six months after Steets died, the "award belonged to [the] Estate." *Id*. at 5. It explains that because Kemps did not appeal that decision, it was "a final order." *Id*. Based on these procedural facts, PAJ contends that the award of specific loss benefits in *Kemps* was necessarily made to the Estate pursuant to Section 410. Thus, PAJ argues that the decision in *Kemps* was an award to the Estate under Section 410. *Id*. at 9. PAJ therefore argues that the *Celebration Fireworks* court violated the law of the case by failing to recognize that it had already awarded Steets' permanent loss benefits to the Estate in *Kemps*.

Employer disputes this argument because 1) it does not answer the question we granted for review; 2) the Estate and PAJ are at odds about the timing of the award of specific loss benefits because the Estate alleges the award vested when the WCJ made its decision, whereas PAJ alleges that the pertinent date was the *Kemps* decision; and 3) the line of cases beginning with *Endres* establishes that Section 410 does not provide an independent basis for an award of benefits.

Finally, Employer acknowledges that Steets' heir (her sister) "may feel entitled to something more" than burial expenses, but it argues that this was not an emotional distress claim; it was a WCA claim governed by the express terms of the statute. *Id*. at 33. Ultimately, Employer states that Steets "had no dependents and unfortunately passed away as a result of the work-related injuries she sustained on June 30, 2017. WCJ Harris, the Board, and the Commonwealth Court made the difficult but legally correct decision in concluding" that 1) Section 307 applied, 2) Employer was responsible for reasonable funeral expenses, and 3) that obligation had been satisfied. *Id*. at 33-34.[16]

---

[16] Beiler Brothers, LLC ("Beiler") filed an amicus brief in support of Employer because they were litigating a similar claim before the Commonwealth Court in *Riehl v. WCAB (Beiler Bros., LLC)*, 327 A.3d 735, 737 (Pa. Commw. 2024) (en banc) ("*Riehl*"), where a claimant died during litigation of specific loss benefits, and his widow sought relief via Section 410.

Beiler asserts that the General Assembly simply did not intend to provide for the survival of specific loss benefits "in every claim." Beiler Brief at 3. It argues the general rule, established in *Kujawa*, is that workers' compensation benefits are "extinguished at the death of a claimant regardless of the cause of death." *Id*. at 3-4 (citing and discussing *Kujawa*). Beiler believes that Section 306(g) is the exception to that rule, and that it plainly makes the survival of specific loss benefits limited to when the worker dies of a cause unrelated to the work injury. *Id*. at 5. It argues that the 1972 amendments only provided an exception to the general rule, and that the General Assembly's silence since *Burns* was decided is further evidence of this intent.

However, Beiler's similar argument before the Commonwealth Court failed. After this case was heard at oral argument, the Commonwealth Court decided *Riehl*, ruling that a widow was entitled to her deceased husband's specific loss benefits by operation of Section 410 even though he had died from his work-related injury. *See Riehl*, 327 A.3d at 748 (holding "this application of Section 410 comports with the Act's policy goals of ensuring that surviving dependents, like Claimant's widow, are not left without a fair remedy when the worker they depend on dies, whether from work injuries or otherwise"). Nonetheless, the court restricted its holding to circumstances where there is an eligible dependent, to the exclusion of cases like the present one where an estate is the only eligible recipient under Section 410.

On November 26, 2024, immediately after *Riehl* was decided, the Estate filed an application for post-submission communication asking this Court to consider *Riehl* in our (continued…)

**Analysis**

The broad question before us is whether the WCA allows for the survival of specific loss benefits when a worker dies from her work-related injury. We can resolve that question by determining whether the Estate has a right to Steets' specific loss benefits under the WCA following Steets' death from her injuries. Because we answer the second question in the affirmative, the question upon which we accepted for review must also be answered in the affirmative. There are circumstances in which specific loss benefits survive the death of a worker who dies of her work-related injury. In so holding, we reject the Commonwealth Court's conclusion that specific loss benefits can never survive a work-related death.

The WCA "is remedial legislation designed to compensate claimants for earnings loss occasioned by work-related injuries." *Triangle Bldg. Ctr. v. WCAB (Linch)*, 746 A.2d 1108, 1111 (Pa. 2000). As we recently discussed in *Herold v. University of Pittsburgh*, ___A.3d___, 2025 WL 258783 (Pa. 2025), the WCA and its counterparts in our sister states emerged more than a century ago as the product of a grand bargain struck to balance the interests of employers and workers in light of their "mutual dissatisfaction with the common law negligence system for remedying workers for their work-related injuries." *Herold*, 2025 WL 258783 at *14. On one side, "workers gave up the right to sue their employers for job-related injuries" in exchange for defined benefits following work-related injuries where relief for workers under the common law tort paradigm had been fraught with risk. *Id*. On the other side, employers sacrificed a variety of tort defenses for "a no-fault system" that insulated them from "punitive damages and exorbitant unexpected costs." *Id*. As we explained in *Herold*, the essence of this grand bargain entails "(1) certain compensation for the injured worker without regard to fault; and (2) the exclusivity

_____

deliberations, and Employer did not object to the application. That application is hereby granted.

of the administrative forum for resolving such guaranteed compensation, i.e., employer immunity from common law liability." *Id.* at *15. Consequently, workers' compensation benefits are creatures of statute that fully supplanted the common law tort remedies that preceded them.[17]

We thus begin our analysis by reciting our well-worn standards governing statutory interpretation. "Our standard of review in matters involving statutory interpretation is de novo, and our scope of review is plenary." *Mimi Invs., LLC v. Tufano*, 297 A.3d 1272, 1284 (Pa. 2023). Our first and primary interpretive concern is the statutory text, which is the best indication of the General Assembly's intent. *Id*. When the text clearly commands a particular result, we will not ignore it in furtherance of the broader goals or principles driving the statutory framework under consideration. *See* 1 Pa.C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."). It is only when we discern ambiguity in statutory text that we endeavor to resolve it with other considerations that assist in determining legislative intent. *A.S. v. Pa. State Police*, 143 A.3d 896, 903 (Pa. 2016); 1 Pa.C.S. § 1921(c).

The Commonwealth Court followed *Estate of Harris*' interpretation of Sections 306, 307, and 410 of the WCA as binding precedent. This Court has never addressed that interpretation and so the issue before us arrives as a matter of first impression unrestrained by *Estate of Harris*. We begin our analysis with relevant text of the WCA.

Section 306 of the WCA is vast in scope, and our focus is on subsections (c), (d), and (g) of that provision. Section 306(c) defines specific loss benefits, and provides in relevant part as follows:

---

[17] "Workers' compensation is purely a creature of statute, or statutory creation, and workers' compensation is a statutory remedy." 82 Am. Jur. 2d Workers' Compensation § 3 (footnotes omitted).

For all disability resulting from permanent injuries of the following classes, the compensation shall be exclusively as follows:

*     *     *

(3) For the loss of an arm, sixty-six and two-thirds per centum of wages during four hundred ten weeks.

*     *     *

(25) In addition to the payments hereinbefore provided for permanent injuries of the classes specified, any period of disability necessary and required as a healing period shall be compensated in accordance with the provisions of this subsection. The healing period shall end (I) when the claimant returns to employment without impairment in earnings, or (II) on the last day of the period specified in the following table, whichever is the earlier:

*     *     *

For the loss of an arm, twenty weeks.

*     *     *

Compensation for the healing period under paragraph (25) of this clause shall be computed as provided in clause (a) of this section. When an employe works during the healing period, his wages and earning power shall be as defined in this act and he shall not receive more in wages and compensation combined than his wages at the time of the injury as defined in section three hundred and nine. Where any such permanent injury or injuries shall require an amputation at any time after the end of the healing period hereinbefore provided, the employe shall be entitled to receive compensation for the second healing period, and in the case of a second injury or amputation to the same limb prior to the expiration of the first healing period a new healing period shall commence for the period hereinbefore provided, and no further compensation shall be payable for the first healing period.

77 P.S. § 513. Section 306(c) of the WCA is fully subsumed within Purdon's version of

the statute that appears as Section 513 of Title 77 (hereinafter, "Purdon's § 513").

Section 306(d) of the WCA also appears at the end of Purdon's § 513, and reads

as follows:

> Where, at the time of the injury the employe receives other injuries, separate from these which result in permanent injuries enumerated in clause (c) of this section, **the number of weeks for which compensation is specified for the permanent injuries shall begin at the end of the period of temporary total disability which results from the other separate injuries**, but in that event the employe shall not receive compensation provided in clause (c) of this section for the specific healing period. In the event the employe suffers two or more permanent injuries of the above enumerated classes compensable under clause (c) of this section, he shall be compensated for the largest single healing period rather than the aggregate of the healing periods.

Purdon's § 513 (emphasis added).[18]

Section 306(g) of the WCA provides survivor benefits when an injured worker dies

from a cause unrelated to her work-related injury:

> Should the employe die from some other cause than the injury, payments of compensation to which the deceased would have been entitled to under section 306(c)(1) to (25) shall be paid to the following persons who at the time of the death of the deceased were dependents within the definition of clause 7 of section 307 and in the following order and amounts:
>
> (1) To the surviving widow or widower if there are no children under the age of eighteen.
>
> (2) To a surviving widow or widower and a surviving child or children in which event the widow or widower shall receive one-half and the surviving child or children shall receive the other half.
>
> (3) To a surviving child or children if there is no surviving widow or widower.

---

[18] Purdon's § 513 begins with a heading that reads: **"Schedule of compensation for disability from permanent injuries of certain classes**." *Id.* However, that heading does not appear anywhere in Section 306 of the WCA.

(4) If there is no surviving widow or widower and no surviving child or children of the deceased then to that dependent or those dependents named in clause 5 of section 307.

(5) If there are no persons eligible as named above or in those classes then to those persons who are named in clause 6 of section 307.

(6) When such compensation is paid to dependents above named, compensation shall not cease even though the person receiving the payments ceases to be a dependent as defined in section 307.

(7) If there be no dependents eligible to receive payments under this section then the payments shall be made to the estate of the deceased but in an amount not exceeding reasonable funeral expenses as provided in this act or if there be no estate, to the person or persons paying the funeral expenses of such deceased in an amount not exceeding reasonable funeral expenses as provided in this act.

77 P.S. § 541 ("Purdon's § 541") (Purdon's footnotes omitted).[19]

Separately, Section 307 of the WCA provides survivor benefits when an injured worker dies:

In case of death, compensation shall be computed on the following basis, and distributed to the following persons: Provided, [t]hat in no case shall the wages of the deceased be taken to be less than fifty per centum of the Statewide average weekly wage for purposes of this section:

(1) If there be no widow nor widower entitled to compensation, compensation shall be paid to the guardian of the child or children, or, if there be no guardian, to such other persons as may be designated by the board as hereinafter provided as follows:

(a) If there be one child, thirty-two per centum of wages of deceased, but not in excess of the Statewide average weekly wage.

---

[19] Yet again, Purdon's § 541 provides a heading that does not appear in the WCA. It reads: **"Payments to survivors in event of death from cause other than injury**." Purdon's § 541.

(b) If there be two children, forty-two per centum of wages of deceased, but not in excess of the Statewide average weekly wage.

(c) If there be three children, fifty-two per centum of wages of deceased, but not in excess of the Statewide average weekly wage.

(d) If there be four children, sixty-two per centum of wages of deceased, but not in excess of the Statewide average weekly wage.

(e) If there be five children, sixty-four per centum of wages of deceased, but not in excess of the Statewide average weekly wage.

(f) If there be six or more children, sixty-six and two-thirds per centum of wages of deceased, but not in excess of the Statewide average weekly wage.

The amounts payable under (b), (c), (d), (e) and (f) of clause (1) of this section shall be divided equally among the children if those children are with different guardians.

(2) To the widow or widower, if there be no children, fifty-one per centum of wages, but not in excess of the Statewide average weekly wage.

(3) To the widow or widower who is the guardian of all of the deceased's children, payment shall be as follows:

(a) If there is one child, sixty per centum of wages, but not in excess of the Statewide average weekly wage.

(b) If there are two or more children, sixty-six and two-thirds per centum of wages, but not in excess of the Statewide average weekly wage.

(4) If there is a widow or widower who is not the guardian of all of the deceased's children, the widow or widower and to the respective guardians as follows:

(a) If there is one child, a total of sixty per centum of wages, but not in excess of the

Statewide average weekly wage, to be divided equally between the widow or widower and the child.

(b) If there are two or more children, a total of sixty-six and two-thirds per centum of wages, but not in excess of the Statewide average weekly wage, to be divided as follows: thirty-three and one-third per centum to the widow or widower and the remainder to be divided equally among the children.

(5) If there be neither widow, widower, nor children entitled to compensation, then to the father or mother, if dependent to any extent upon the employe at the time of the injury, thirty-two per centum of wages but not in excess of the Statewide average weekly wage: Provided, however, [t]hat in the case of a minor child who has been contributing to his parents, the dependency of said parents shall be presumed: And provided further, [t]hat if the father or mother was totally dependent upon the deceased employe at the time of the injury, the compensation payable to such father or mother shall be fifty-two per centum of wages, but not in excess of the Statewide average weekly wage.

(6) If there be neither widow, widower, children, nor dependent parent, entitled to compensation, then to the brothers and sisters, if actually dependent upon the decedent for support at the time of his death, twenty-two per centum of wages for one brother or sister, and five per centum additional for each additional brother or sister, with a maximum of thirty-two per centum of wages of deceased, but not in excess of the Statewide average wage, such compensation to be paid to their guardian, or if there be no guardian, to such other person as may be designated by the board, as hereinafter provided.

(7) Whether or not there be dependents as aforesaid, the reasonable expense of burial, not exceeding seven thousand dollars ($7,000), which shall be paid by the employer or insurer directly to the undertaker (without deduction of any amounts theretofore paid for compensation or for medical expenses).

77 P.S. § 561 ("Purdon's § 561").[20]

Finally, Section 410 of the WCA states:

> If, after any injury, the employer or his insurer and the employe or his dependent, concerned in any injury, shall fail to agree upon the facts thereof or the compensation due under this act, the employe or his dependents may present a claim petition for compensation to the department.
>
> **In case any claimant shall die before the final adjudication of his claim, the amount of compensation due such claimant to the date of death shall be paid to the dependents entitled to compensation, or, if there be no dependents, then to the estate of the decedent.**
>
> Whenever any claim for compensation is presented and the only issue involved is the liability as between the defendant or the carrier or two or more defendants or carriers, the referee of the department to whom the claim in such case is presented shall forthwith order payments to be immediately made by the defendants or the carriers in said case. After the department's referee or the board on appeal, render a final decision, the payments made by the defendant or carrier not liable in the case shall be awarded or assessed against the defendant or carrier liable in the case, as costs in the proceedings, in favor of the defendant or carrier not liable in the case.

77 P.S. § 751 ("Purdon's § 751") (Purdon's footnote omitted) (emphasis added).[21]

---

[20] Purdon's heading to this provision, "**Persons entitled to compensation on death of employe; amounts**" is also not found in the WCA. Purdon's § 561.

[21] Yet again, the title provided in Purdon's § 751, "**Presentation of claim petition upon failure to agree; payments when issue of accident and injury not denied or resolved**" is not contained in the WCA. Purdon's § 751.

Steets was awarded special loss benefits by the WCJ under Section 306(c) for injuries that were separate and distinct from the injuries for which she was already receiving temporary total disability benefits. *Kemps*, 257 A.3d at 1275. Consequently, when payment of Steets' total disability benefits ended, she was entitled to receive special loss benefits by operation of Section 306(d) of the WCA. *See* Purdon's § 513 (stating "the number of weeks for which compensation is specified for the permanent injuries shall begin at the end of the period of temporary total disability which results from the other separate injuries"). As we held in *City of Scranton*, a period of temporary total disability ends with the death of the injured worker for purposes of Section 306(d).[22]

---

[22] In *City of Scranton*, Rideski, the injured worker, was awarded specific loss benefits before his death that were set to commence "upon the termination of the total disability[.]" *City of Scranton*, 638 A.2d at 944-45. Rideski subsequently died due to causes unrelated to his workplace injury while he was still receiving total disability benefits. His widow filed a petition seeking to recover Rideski's specific loss benefits under Section 306(g). The WCJ ordered the City of Scranton to pay those specific loss benefits to Rideski's widow on the theory that she was "entitled to receive these benefits upon the termination of [Rideski's] total disability which … occurred at death." *Id*. The City of Scranton appealed, and the Board affirmed, but the Commonwealth Court then reversed after concluding that specific loss benefits had not vested because Rideski was still receiving total disability benefits at the time of his death. *Id*. at 945. We reversed that decision, reasoning that, contrary to the city's argument that Section 306(d) controlled when a right to specific loss benefits vested:

> Section 306(d) merely sets the timetable for when payments of specific loss benefits are to begin. The section does not explain or define when an injured employee is entitled to payments or when a period of temporary total disability "ends" but only requires that any additional payments for other injuries begin at the end of the temporary total disability.

*Id*. at 946. Rideski had been awarded specific loss benefits before died.

In *City of Scranton*, we also rejected the city's reliance on *Turner* for the proposition that total disability benefits only vested after "an eventual healing or natural termination[.]" *Id*. To the contrary, we held that the "thrust of *Turner*'s discussion of Section 306(d) was to explain that although some disabilities may not end through healing, the method of ending permanent disability is irrelevant because it is the termination of permanent disability, not the way it ends that is critical." *Id*. "Similarly," we found that Rideski's death "operated (continued…)

Applying *City of Scranton* and *Turner* to the facts of this case, Steets' right to specific loss benefits was established when the WCJ awarded the benefits, and her death simultaneously terminated her total disability and triggered payment of her specific loss benefits under the schedule set forth in Section 306(d). The Estate contends that it is entitled to those benefits by operation of Section 410 of the WCA because Steets died while Employer was appealing the specific loss award. The Commonwealth Court found that the Estate was not entitled to these benefits through its reading of Sections 306, 307, and 410 of the WCA, as guided by its own binding precedent in *Estate of Harris*, and Employer continues to endorse that holding. Although binding on the Commonwealth Court, *Estate of Harris* is not controlling precedent here, and the Estate has expressly asked us to overrule it.

The Estate counters that Section 410 provides that if an injured worker dies "before final adjudication of his claim," the compensation due to the "claimant to the date of death" is payable, first, to "dependents entitled to compensation," or, "if there be no dependents, then to the estate of the decedent." Purdon's § 751. In the Estate's view, this provision could not be clearer. Because Steets' award of special loss benefits was under review in *Kemps* when she died, Section 410 applied to her claim and directed that her contested special loss benefits be paid to the Estate. This aligns with the dissent in *Celebration Fireworks*.

---

as a termination of his total disability[,]" and that his right to future payments of specific loss benefits "became firmly established" when the WCJ awarded those benefits and were "never appealed[.]" *Id*. at 946, 947. Thus, we concluded in *City of Scranton* that because Rideski's death terminated his total disability benefits, "Section 306(d) required that his compensation begin for his specific loss." *Id*. at 947. However, because those "payments could not be made directly to him," the WCA provided that they were "payable directly to his surviving spouse[.]" *Id*.

The Majority in *Celebration Fireworks* disregarded this plain reading of Section 410 because the Estate ostensibly "failed to identify any legal basis consistent with the Act's express language" to award Steets' specific loss benefits to the Estate. *Celebration Fireworks*, 295 A.3d at 321. However, the plain text of Section 410 was the basis upon which the Estate argued it was entitled to Steets' special loss benefits. Nonetheless, the lower court found that, pursuant to *Estate of Harris*, specific loss benefits only survive the death of a worker if that death is unrelated to the work-related injury that gave rise to compensation under the WCA, i.e., that Section 306(g) is the only provision under the WCA that permits survivor benefits for a specific loss award. Pursuant to its reading of *Estate of Harris*, the lower court reasoned that an estate is only entitled to funeral expenses when an injured worker dies of a work-related injury without surviving statutory dependents under Section 307 of WCA. Because *Estate of Harris* is essential to the lower court's decision, we examine that case in more detail to determine whether it is distinguishable (as the *Celebration Fireworks* Dissent would have held), decided in error (as the Estate maintains), or a correct statutory interpretation of the WCA (as maintained by Employer).

Harris was injured in 1999 while working for her employer, Sunoco, Inc., and she died two months later while still hospitalized for those injuries. *Estate of Harris*, 845 A.2d at 240. Through a temporary NCP, Sunoco "covered all of Harris' medical expenses, paid her total disability benefits until her death[,] and paid the statutory funeral allowance on account of her death." *Id*. at 241. Harris was survived by her estranged husband and five, nondependent children, and her will named her children as heirs but expressly excluded her husband. Harris' estate filed a petition for review seeking "that Harris' injuries be resolved to a specific loss." *Id*. The question in *Estate of Harris* "was whether an estate is entitled to claim a specific loss benefit where the decedent was receiving total

disability benefits at the time of death and died of causes related to a compensable injury." *Id*. As acknowledged by that court, "had Harris survived her injuries, she could have pursued a specific loss benefit for the loss of her right lower leg" pursuant to Section 306(c) of the WCA. *Id*. at 242. However, Harris never filed for specific loss benefits during the short time before her death.

In dismissing Harris' estate's Section 410 claim, the Commonwealth Court examined Sections 306(g) and 307 of WCA, observing that Section 307 governs fatal claim benefits when an employee dies from their work-related injuries, and does not explicitly distinguish between total disability and specific loss benefits. It found that "[n]one of Harris' survivors could show dependency and, thus, were not eligible for fatal claim benefits" because, under Section 307, there are no benefits provided to nondependent heirs.[23] *Id*. It then considered Section 306(g), which governs fatal claims for specific loss benefits when an injured employee dies from a cause other than the work-related injury. As the court noted, Section 306(g) provides fatal claim benefits for "the same category of dependent persons listed in Section 307" and, when there are no eligible dependents, it allows only for payments "to the estate of the deceased but in an amount not exceeding reasonable funeral expenses[.]" *Id*. at 243 (quoting Purdons' § 541(7)).

The *Estate of Harris* court determined that although Section 306(g) applies to specific loss benefits of the deceased, it only applies when an injured worked dies from a cause unrelated to the work-related injury and, thus, it did not apply to Harris' estate's claim. Section 307 was also inapplicable because it applies to deaths due to work-related

---

[23] Instead, when there are no dependents, Section 307 only provides benefits to "the undertaker" for reasonable funeral expenses not exceeding $7,000. Purdon's § 561(7).

injuries, but does not provide for the survival of specific loss benefits as Section 306(g) does explicitly.[24]

Because neither provision applied to Harris' estate's claim to Harris' specific loss benefits, the *Estate of Harris* court next considered whether Section 410 provides a "separate basis for the payment of specific loss benefits to an estate." *Id*. *Estate of Harris* determined that it was bound by *Endres* to conclude that Section 410 did not provide a separate basis for an award. The *Endres* court had held that:

> Section 410 of the [WCA] is a general provision which states that benefits due to a claimant who dies before final adjudication of his or her claim are payable to the claimant's estate or dependents. This statutory provision does not provide an independent or supporting basis for a specific loss award[.]

*Endres*, 677 A.2d at 903.

The *Endres* court determined this was because "Section 306(g) relates directly to the receipt of specific loss benefits and is, therefore, a more particular provision." *Id*. Furthermore, it stated that in *Burns*, the Commonwealth Court had held

> that specific loss benefits are payable to survivors pursuant to Section 306(g) of the Act where the decedent's death is from a cause other than the work injury. Accordingly, Section 306(g) of the Act supports the WCJ's determination that Decedent's death from causes related to the work injury does not entitle Claimant **to simultaneously collect fatal claim benefits and specific loss payments**.

*Id*. (citing *Burns*) (emphasis added). Notably, in *Endres*, the deceased worker's dependent, his widow, had already been awarded fatal claim benefits pursuant to Section 307, as Endres had died due to his work-related injury. *Id*. at 902. Thus, the claimant in

---

[24] Section 306(g) begins: "Should the employe die from some other cause than the injury, payments of compensation to which the deceased would have been entitled to under section 306(c)(1) to (25) shall be paid to the following persons… ." Purdon's § 541(emphasis added). Section 306(c) only defines specific loss benefits.

*Endres* had attempted to recover fatal claim benefits related to Endres' ostensible entitlement to a posthumous specific loss award after having already recovered fatal claim benefits related to Endres' previously-awarded total disability benefits.

Nonetheless, the *Estate of Harris* court rejected the claim that *Endres* was distinguishable because Harris' estate had not sought double recovery, holding that the decisions in *Endres*, *Burns*, and *City of Scranton* "stand for the legal conclusion that Section 306(g) of the Act governs the payment of specific loss benefits and that such benefits may be paid **only** where death of the employee is from a cause other than the work injury." *Estate of Harris*, 845 A.2d at 244 (emphasis added). *Estate of Harris* further reasoned that:

> Under the statutory construction principle *expressio unius est exclusio alterius*, we must find that because the General Assembly conditioned payment of specific loss benefits on a death by cause other than the work injury that it intended to exclude the alternative, i.e., death by the work injury. There is a sound reason for this canon of construction; without it, the Act would have been twice as long because its drafters would have been required to couple every declarative sentence with its obverse.[13]
>
> > [13] In this case, for example, Section 306(g) would have to read "benefits will be paid to survivors of an employee whose death is not by the injury but by some cause other than the injury" in order to avoid the [e]state's proffered construction.

*Id*. Thus, *Estate of Harris* read Sections 306(g) to be the exclusive means by which an estate would ever be entitled to compensation under the WCA, thereby excluding the possibility of any fatal claim for specific loss benefits arising under Sections 307 or 410. This was not dicta, because *Estate of Harris* used this rationale to dismiss Harris' estate's Section 410 claim, even though the plain text of Section 410 precluded that claim without resorting to application of the purported exclusivity of Section 306(g).

In reaching that conclusion, *Estate of Harris* misread the import of its prior decision in *Endres*, a mistake that has been repeated by the court below in ruling that, "based on Section 306(g) of the Act and applicable precedent, when an employee dies due to a work injury while collecting total disability benefits and before specific loss benefits are payable, the only specific loss payments due are reasonable (up to $7,000.00) funeral expenses to be paid to the funeral home." *Celebration Fireworks*, 295 A.3d at 320. It further found its decision supported by the fact that since *Endres* and *Estate of Harris*, "the General Assembly has not taken steps to change its effect." *Id*. at 322.

We agree with the dissent below that *Estate of Harris* and *Endres* are factually distinguishable from this case because neither Harris nor Endres ever sought specific loss benefits before their deaths. Thus, there was no pre-death award of specific loss benefits contested in either case that would fit the criteria of Section 410, which requires circumstances where the claimant dies "before the final adjudication of **his claim**… ." Purdon's § 751 (emphasis added). Steets, by contrast, pursued specific loss benefits during her lifetime, was awarded those benefits by the WCJ, and was defending that award on appeal in *Kemps* when she died. The Estate is seeking the specific loss benefits that Steets' sought and was awarded during her lifetime. *Estate of Harris* concerned circumstances where the injured worker never pursued specific loss benefits and, therefore, the plain text of Section 410 was not implicated in that case notwithstanding Harris' estate's claim to the contrary.

The plain text of Section 410 refers to claims made by the injured worker in the first instance during their lifetime, not to fatal benefits claims made by survivors that are governed by Sections 306(g) or 307. Although inapposite on the facts, the decision in *Estate of Harris* nonetheless created a precedential holding in the Commonwealth Court that estates of injured workers can never recover specific loss benefits unless Section

306(g) applies to their claim for relief. As the dissent in *Celebration Fireworks* aptly observed, *Estate of Harris* misread *Endres* on this point, and so further discussion of *Endres* is warranted.

Endres died having never petitioned for specific loss benefits during his lifetime and, therefore, the plain language of Section 410 did not apply to the circumstances of that case. His widow, a surviving dependent, filed a petition for fatal claim benefits under both Sections 306(g) and 307. The WCJ determined that his widow was entitled to fatal claim benefits under Section 307 (because Endres was eligible for lifetime total disability) but it denied her simultaneous attempt to recover specific loss fatal claim benefits under Section 306(g). *Endres*, 677 A.2d at 902-03. On appeal, his widow claimed that Endres would have been entitled to specific loss benefits when he died, because payment of specific loss benefits were triggered by operation of Section 306(d) under *City of Scranton*. However, the *Endres* court observed that there were no benefits available to his widow under Section 306(g) because Endres died from his injuries, whereas Section 306(g) only applies when a worker dies from a non-work-related cause. Applying *City of Scranton*, the court further observed that Section 306(d) does not award specific loss benefits, it provides a schedule for when specific loss benefits begin after total disability benefits cease. The *Endres* court also found that Section 410 did not provide an "an independent or supporting basis for a specific loss award as" Endres' widow had argued. *Id*. at 903. In that context, the *Endres* court stated that Section 306(g) was "more particular" than Section 410 because it "specifically addresses the receipt of specific loss benefits by an injured employee's dependents if the injured employee dies from causes unrelated to the work injury." *Id*. at 93.

We agree with the dissent below that *Estate of Harris* misinterpreted *Endres*. *Endres* did not involve a plausible Section 410 claim because Endres never sought

specific loss benefits during his lifetime. It is in that context that the *Endres* court observed that Section 410 does not provide an independent basis for specific loss award, because Section 410 does not award benefits that were never sought during the injured worker's lifetime, just as Section 306(d) does not operate to award specific loss benefits to the worker posthumously (even if the worker would have been eligible for them). Rather, Section 410 only addresses circumstances in which benefits sought during the worker's lifetime were still contested at the time of the worker's death. Here, Steets died while her specific loss benefits award was being contested by Employer. Thus, *Endres*' holding that Section 410 does not provide an independent basis for a specific loss award is inapposite. The Estate had no reason to assert that Section 410 provides an independent basis for a specific loss award because the WCJ awarded specific loss benefits to Steets before her death.

However, *Estate of Harris* went even further to hold that specific loss benefits only survive the death of the worker if Section 306(g) applies, i.e., when a worker dies from a cause unrelated to the work-related injury. Not only was that interpretation unnecessary to the disposition *Estate of Harris* with regard to Section 410 as discussed above, it was simply wrong under the express terms of the WCA.

*Estate of Harris*' holding that the survivability of specific loss benefits are contingent upon the worker dying of causes unrelated to the work-related injury was accompanied by scant analysis. It was premised solely on the statutory construction principle of expressio unius est exclusio alterius,[25] upon which the court determined that "because the General Assembly conditioned payment of specific loss benefits on a death

---

[25] "Expressio unius est exclusio alterius" is the principle that "the inclusion of a specific matter in a statute implies the exclusion of other matters." *Thompson v. Thompson*, 223 A.3d 1272, 1277 (Pa. 2020) (quoting *Atcovitz v. Gulph Mills Tennis Club, Inc.*, 812 A.2d 1218, 1223 (Pa. 2002)).

by cause other than the work injury that it intended to exclude the alternative, i.e., death by the work injury." *Estate of Harris*, 845 A.2d at 244. *Estate of Harris* used this rationale to broadly cabin any available relief under Section 307 and 410 as to the survivability of specific loss benefits for **both** dependent and nondependent heirs.

Although *Estate of Harris* did not explicitly rely on it for that interpretation, the Commonwealth Court reached a similar result in *Burns*. *Burns* interpreted Section 306(g) and determined that "**a prerequisite to payment of specific loss payments** to survivors is that the claimant's death was from a cause other than the injury." *Burns*, 469 A.2d at 344 (emphasis added). *Burns* purported to rely on our decision in *Reed* and the text of Section 306(g) for that conclusion, but we said nothing of the sort in *Reed*.[26] Thus, *Burns*, like *Estate of Harris*, engaged purely in statutory interpretation to conclude that Section 306(g) is the exclusive means by which specific loss benefits survive a worker's death. *Estate of Harris* expanded *Burns*' reading of Section 306(g) to cabin Section 410 with Section 306(g)'s cause-of-death limitation.[27] But *Burns* did not explicitly hold that Section 306(g) cabins the relief available under Section 410; it only focused on relief available through Section 306(g). Nonetheless, broadly read, *Burns'* proclamation that death from a cause other than the injury is a prerequisite for payment of specific loss benefits to survivors served as the basis for the ruling in *Estate of Harris*.

We agree with the Estate that this interpretation is incorrect. It is true by its express terms that Section 306(g) only applies when an employee dies "from some other cause

---

[26] *Reed* died of a cause unrelated to his compensable injuries. Thus, the question of whether a specific loss award survived an injury-related death was not before us in *Reed* because it was clear that Section 306(g) applied under the circumstances of that case.

[27] *Estate of Harris* also used Section 306(g) as a limitation on the amount an estate can recover when a worker entitled to specific loss benefits dies because Section 306(g) limits fatal benefits to estates to reasonable funeral expenses. However, just as Section 306(g) does not cabin Section 410 with respect to the worker's cause of death, it does not limit Section 410 awards to those available to estates under Section 306(g).

than the injury[.]" Purdon's § 541. However, there is no language in Section 306(g) stating that it is the exclusive vehicle for survivors to recover for specific loss benefits. To the contrary, when reading Section 306(g) in conjunction with Section 307, it is clear that Section 307 provides survivor benefits regardless of the type of benefits and regardless of the cause of death. Section 306(g), by contrast, provides a special set of rules for distributing specific loss benefits if the worker dies from a cause other than the work-related injury.

*Estate of Harris* misapplied the principle of expressio unius est exclusio alterius to exclude specific loss benefits from the scope of survivor benefits available under both Sections 307 and 410. That principle certainly applies internally to Section 306(g) insofar as Section 306(g) only provides for the survival of specific loss benefits; however, it does not apply at all to the survival of total loss benefits. By exclusively naming specific loss benefits in that provision, it is clear the legislature did not intend for Section 306(g) to apply to total disability benefits. Likewise, the cause-of-death limitation expressed in Section 306(g) is exclusive to Section 306(g).

It was error for the Commonwealth Court to use Section 306(g) to exclude from Sections 307 and 410 the survivability of specific loss benefits as those are wholly distinct provisions of the WCA. Both Sections 307 and 410 refer to "compensation" generally, making no distinction between total disability benefits and specific loss benefits. When the legislature intended to specify a distinction between specific loss and total disability, it named the specific provision of Section 306 in which specific loss benefits are defined. *See* Purdon's § 541 (describing "payments of compensation to which the deceased would have been entitled to under section 306(c)(1) to (25)"). By contrast, as both Section 307 and 410 use the broader term of "compensation," the legislature clearly did not intend to exclude from either provision the survival of specific loss benefits. When a worker dies

from a cause unrelated to his compensable injuries, Section 306(g) provides a specific rule for distribution of specific loss benefits to dependents and, where there are no dependents to an estate (albeit limited to reasonable funeral expenses). Section 306(g) neither explicitly nor implicitly cabins the distinct relief available under Sections 307 or 410, which both apply independent of the cause of death.

Furthermore, the trigger for application of Section 306(g) is the manner of death, not the category of benefits that the injured worker was entitled to at the time of death. When that cause-of-death criteria is met, Section 306(g) provides a special rule for the distribution of specific loss benefits. Section 306(g) does not operate to render Section 307 inapplicable to circumstances where the death is not work-related. Section 301(1) imposes that limitation on Section 307. *See* 77 P.S. § 411(1) ("[W]herever death is mentioned **as a cause for compensation** under this act, **it shall mean only death resulting from such injury and its resultant effects**, and occurring within three hundred weeks after the injury.) (emphasis added). Thus, Section 306(g) operates as an exception to the general rule provided by Section 301(1) that otherwise limits fatal benefits compensation to survivors in circumstances where the worker dies of their compensable injuries.

But Section 410 is a different type of provision altogether, applying only when compensation for an injury was contested at the time of a claimant's death. Section 410 permits an employee or his dependents to "present a claim petition for compensation to the department" when "the employer or his insurer and the employe or his dependent, concerned in any injury, shall fail to agree upon the facts thereof or the compensation due under this act." Purdon's § 751. If "any claimant shall die before the final adjudication of his claim," Section 410 dictates that "the amount of compensation due such claimant to the date of death shall be paid to the dependents entitled to compensation, or, if there be

no dependents, then to the estate of the decedent." *Id*. Section 410 is not itself contingent upon the manner of death or the types of benefits that are being contested. Moreover, as the *Endres* court correctly observed, Section 410 does not itself create an independent basis for compensation at all—it governs **disputes** about "compensation due under this act." *Id*. Section 410 is a remedial provision applicable when a separate claim for relief arising under the WCA is not fully resolved at the time of the claimant's death.

Thus, upon review of the plain text of Sections 306, 307, and 410 of the WCA, we hereby overrule *Estate of Harris* and *Burns* insofar as those decisions limit the survival of specific loss benefits exclusively to circumstances where a worker dies from causes unrelated to his compensable injuries under Section 306(g). The plain text of Section 410 provides a distinct type of remedial relief.

For purposes of Section 410, Steets died before the final adjudication of her claim.[28] *See id*. Section 410 dictates that compensation due to Steets "to the date of [her] death" is to be paid to the Estate, as it is undisputed that there are no "dependents entitled to compensation" in this case. *Id*. However, there was no finding as to the amount

---

[28] Employer contests the Estate's assertion that that the phrase "final adjudication" extends through an appeal as "contrary to the terms of the [WCA] and the Rules of Appellate Procedure." Employer's Brief at 31. Employer only cites Pa.R.A.P. 341, which provides that appeals of right only arise from final orders. But Section 410 does not discuss final orders. Moreover, Employer's interpretation would suggest that when a worker is denied benefits and successfully appeals that denial (but dies during his appeal), she is not entitled to recover for unpaid benefits during the appellate period. That makes no sense given the obvious remedial purpose of Section 410.

In any event, the term "final adjudication" is broader than a "final order." An "adjudication" is the "legal process of resolving a dispute; the process of judicially deciding a case." *Adjudication*, Black's Law Dictionary (12th ed. 2024). An appeal is part and parcel of the process of judicially deciding a case. Thus, because Steets' appeal from WCJ was part of the legal process of resolving Employer's dispute over her specific loss benefits award, Steets died before the final adjudication of that claim. This understanding dovetails with our decision in *Calabria v. State Workmen's Ins. Fund*, 3 A.2d 322 (1939), where we stated that "[i]f, after hearing, the Board dismisses a proceeding, it is ended unless kept alive by appeal to the court." *Calabria*, 3 A.2d at 325.

of specific loss benefits due to Steets to the date of her death because the WCJ erroneously determined that estates are not entitled to compensation for fatal claim benefits pursuant to Section 410 under *Estate of Harris*. Consequently, the WCJ awarded only reasonable funeral expenses to the Estate. Accordingly, we remand to the WCJ to determine the amount of specific loss benefits due to Steets to the date of her death that must be paid to the Estate by operation of Section 410.

**Conclusion**

We hold today that by its plain terms the WCA does not categorially bar the recovery of specific loss benefits when a worker dies from her work-related injuries. In Section 410 of the Act, the General Assembly expressly addressed the appropriate relief in cases when a worker dies while contested benefits have not been finally adjudicated. Section 410 provides that specific loss benefits may be paid after a death caused by a work-related injury where, as here, a claim for specific loss benefits was pending at the time of the claimant's death. In so holding, we overrule *Estate of Harris* and *Burns* insofar as they held otherwise and remand this matter to the WCJ to assess the amount of specific loss benefits due to the Estate.

Chief Justice Todd and Justices Dougherty, Mundy and McCaffery join the opinion.

Justice Wecht files a dissenting opinion in which Justice Brobson joins.

Justice Brobson files a dissenting opinion.